UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| | : | |
| ME GLOBAL, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 19-00179 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

Upon consideration of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, other papers on file, and upon due deliberation, it is hereby

**ORDERED** that defendant's cross-motion for summary judgment is hereby granted; and it is

**ORDERED** that plaintiff's motion for summary judgment is hereby denied; and it is further

**ORDERED** that judgment is entered for defendant and this action is dismissed.


_____
JUDGE


Dated: _____
     New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

---

|  | : |  |
| ME GLOBAL, INC., | : |  |
|  | : |  |
|  | : |  |
| Plaintiff, | : | Court No. 19-00179 |
|  | : |  |
| v. | : |  |
|  | : |  |
| UNITED STATES, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

---

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade,

defendant, United States, respectfully moves for an order granting defendant's cross-motion for

summary judgment, denying plaintiff's motion for summary judgment, and dismissing this

action.  The reasons for our cross-motion are set forth in the accompanying memorandum,

defendant's response to plaintiff's Rule 56.3 statement of facts not in dispute, and defendant's

Rule 56.3 statement of undisputed materials facts.

WHEREFORE, defendant respectfully requests that an order be entered granting defendant's cross-motion for summary judgment, denying plaintiff's motion for summary judgment, entering judgment for defendant, dismissing this action, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:

/s/ Alexander Vanderweide

Valerie Sorensen-Clark                    ALEXANDER VANDERWEIDE
Office of the Assistant Chief Counsel     Senior Trial Counsel
International Trade Litigation            Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection        Commercial Litigation Branch
                                          26 Federal Plaza
                                          New York, New York 10278
                                          Tel. (212) 264-9230 or 0482
                                          Attorneys for Defendant

Dated: December 20, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| ME GLOBAL, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 19-00179 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
RULE 56.3 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, United States, responds to plaintiff's, ME Global, Inc. (ME Global), Rule 56.3 statement of facts not in dispute as follows:

1.      Admits.

2.      Denies that "{t}he steel grinding rods were liquidated by CBP under subheading 7228.40.00, HTSUS." Avers that, upon liquidation, U.S. Customs and Border Protection (CBP) classified the subject merchandise under subheadings 7228.30.80 and 9903.80.01 of the Harmonized Tariff Schedule of the United States (HTSUS). *See* ECF No. 7, Entry Papers. Otherwise, admits.

3.      Admits.

4.      Admits.

5.      Admits.

6.      Admits.

7.     Admits the first and third sentences.  Denies the second sentence.  Avers that steel blooms are first heated at a steel mill in China, hot-rolled into bars, and then cooled; the input steel bars are not forged at this time.  *See* Def's Ex. B, Pl.'s Responses to Def's 2nd Interrogatories (2nd Rog Responses) No. 3(a).  Further avers that at a separate joint venture plant, the input steel bars are cut to specific grinding mill length for the intended customer, heated in an Inductoforge, and processed by a series of forging dies while passing through a water quenching system with computerized temperature control.  *Id.* at No. 3(d).  With respect to the fourth sentence, defendant can neither admit nor deny whether "{g}reen rods typically have a hardness of 35-40 HRC (Rockwell)" insofar as plaintiff has presented conflicting information regarding the hardness of "green rods."  *See* ECF No. 20-4, Ex. A to Schlue Decl., Pl.'s Responses to Def's 1st Interrogatories (1st Rog Responses) No. 5.  Admits the remainder of the fourth sentence.

8.     Denies that the "green rods" are converted into a "unique product having a hardness profile vastly different from any raw material steel bars."  Avers that the "raw material steel bars" or "green rods" and the imported grinding rods are both "grinding rods."  Ex. B to Schlue Decl., Pl.'s Responses to Def's 1st Requests for Production (1st RFP Responses) No. 11.  Defendant can neither admit nor deny whether the rods are "mechanically straightened" insofar as plaintiff has presented conflicting information regarding how the rods are straightened.  *See* 2nd Rog Responses No. 3(d).  Otherwise, admits.

9.     Admits that the metallurgical requirements for the imported grinding rods are accurate as stated, but incomplete.  Avers that Quality Inspection Certificates (QICs) for the imported grinding rods further specify that the chemical composition of the rods contains by weight 0.60 to 1.0% of carbon and 0.70 to 1.0% of manganese, in addition to 0.20 to .60% of

2

chromium, 0.10 to .40% of silicon, and less than .025% of both phosphorus and sulfur.  *See* Exs. C & E to Schlue Decl.; Def's Ex. A, Ex. M to Pl's Responses to Def's 2nd Requests for Production.

10.     Denies that the manufacturing process at ME Long Teng "begins with long, high carbon forged alloy steel bars/rods."  Avers that the input steel bars have been hot-rolled, but not forged.  *See* 2nd Rog Responses Nos. 3(a) and (d).  Defendant can neither admit nor deny that the input steel bars "have a hardness of 35-40 HRC (Rockwell)" insofar as plaintiff has presented conflicting information regarding their hardness.  *See* 1st Rog Responses No. 5.  Otherwise, admits.

11.     Defendant can neither admit nor deny whether the imported rods have a pearlite hardness of "35-45 HRC" insofar as plaintiff has presented conflicting information regarding the hardness of the rods.  *See* Schlue Decl. ¶ 16; 1st RFP Responses No. 7.  Otherwise, admits.

12.     Denies that "{t}he ends of the grinding rods will be notched."  Avers that photographs of the rods do not show the rods to have notched ends.  *See* Schlue Decl. ¶ 21; 1st RFP Responses Nos. 10, 15, 18; Ex. C to Schlue Decl.  Otherwise, admits.

13.     Denies that the grinding rods have an outer surface of martensite and pearlite. Avers that the grinding rods have an outer surface of martensite only.  *See* ECF No. 20-3, Pl. Statement of Material Fact No. 11; Schlue Decl. ¶¶ 12, 13, 16, 17; ECF No. 9, Compl. ¶¶ 10, 15, 16.  Defendant can neither admit nor deny that "{t}he core of the grinding rod has a pearlite structure with typical 35-40 HRC" insofar as plaintiff has presented conflicting information regarding the hardness of the pearlite structure.  *See* 1st Rog Responses No. 5.  Otherwise, admits.

14.     Admits.

15.     Admits.

16.     Denies that "a grinding rod needs to have a very specific metallurgical profile." Avers that "green rods," which have not been heat-treated in the same manner as the imported steel grinding rods, are also "grinding rods."  *See* 1ˢᵗ RFP Responses No. 11.  Otherwise, admits.

17.     Admits.

18.     Admits.

19.     Admits.

20.     Admits.

21.     Admits.

22.     Admits.

23.     Admits.

24.     Admits.

25.     Admits.

26.     Admits.

27.     Denies.  Avers that "green rods," which have not been heat-treated in the same manner as the imported steel grinding rods, are also "grinding rods."  *See* 1ˢᵗ RFP Responses No. 11.

28.     Admits.

29.     Admits.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

4

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
       JUSTIN R. MILLER
       Attorney-In-Charge
       International Trade Field Office

Of Counsel:

       /s/ Alexander Vanderweide

Valerie Sorensen-Clark               ALEXANDER VANDERWEIDE
Office of the Assistant Chief Counsel    Senior Trial Counsel
International Trade Litigation        Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection   Commercial Litigation Branch
                                     26 Federal Plaza
                                     New York, New York 10278
                                     Tel. (212) 264-9230 or 0482
                                     Attorneys for Defendant

Dated: December 20, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

|  |  |  |
|---|---|---|
| | : | |
| ME GLOBAL, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 19-00179 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S RULE 56.3 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Rule 56.3 of the Rules of the United States Court of International Trade (USCIT) requires that motions for summary judgment include a separate statement of material facts as to which it is contended there exists no genuine issue to be tried.

Defendant, United States, identifies the following statements of material facts in support of its cross-motion for summary judgment as to which there are no genuine issues to be tried:

1.     Upon liquidation, U.S. Customs and Border Protection (CBP) classified the imported merchandise under subheadings 7228.30.80 and 9903.80.01 of the Harmonized Tariff Schedule of the United States (HTSUS).  *See* ECF No. 7, Entry Papers.

2.     To manufacture the imported steel grinding rods, steel blooms are first heated at a steel mill in China, hot-rolled into bars, and then cooled; the input steel bars are not forged at this time.  *See* Def's Ex. B, Pl.'s Responses to Def's 2nd Interrogatories (2nd Rog Responses) No. 3(a).  At a separate joint venture plant, the input steel bars are cut to specific grinding mill length for the intended customer, heated in an Inductoforge, and processed by a series of forging dies while passing through a water quenching system with computerized temperature control.  *Id*. at

No. 3(d).  Once this manufacturing process has been completed, subject to further quality control checks, the resulting products are steel grinding rods suitable for milling.  *Id*.

3.      The chromium content of the imported steel grinding rods is between 0.3% and 0.39% by weight.  *See* 2nd Rog Responses No. 2; Def's Ex. A, Ex. M to Pl's Responses to Def's 2nd Requests for Production.

4.      The imported steel grinding rods have a uniform cross section along their whole length consisting, throughout their entire mass, of martensite on the surface of the rods and pearlite in the center of the rods.  *See* ECF No. 9, Compl. ¶¶ 10, 15, 16; ECF No. 20-3, Pl.'s Rule 56.3 Statement of Material Fact Nos. 10, 13, 16; ECF No. 20-4, Ex. D to Schlue Decl. at 00010.

5.      "Green rods"—as opposed to the imported grinding rods—are also grinding rods. *See* Ex. B to Schlue Decl., Pl.'s Responses to Def's 1st Requests for Production No. 11.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:      /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:

Valerie Sorensen-Clark
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza
New York, New York 10278
Tel. (212) 264-9230 or 0482

Dated: December 20, 2021      Attorneys for Defendant

2

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| ME GLOBAL, INC., | : |
| | : |
| | : |
| Plaintiff, | :    Court No. 19-00179 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:
Valerie Sorensen-Clark                    ALEXANDER VANDERWEIDE
Office of the Assistant Chief Counsel      Senior Trial Counsel
International Trade Litigation             Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection         Commercial Litigation Branch
                                          26 Federal Plaza
                                          New York, New York 10278
                                          Tel. (212) 264-9230 or 0482
                                          Attorneys for Defendant

Dated: December 20, 2021

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 2

QUESTIONS PRESENTED........................................................................................ 4

SUMMARY OF ARGUMENT .................................................................................. 4

ARGUMENT .............................................................................................................. 6

I.   STANDARD OF REVIEW .................................................................................. 6

II.  ME GLOBAL'S STEEL GRINDING RODS ARE CLASSIFIED IN HTSUS
     HEADING 7228 AS OTHER BARS AND RODS OF OTHER ALLOY STEEL ................. 7

     A.  General Rules of Interpretation..................................................................... 7

     B.  The Imported Goods Are Other Rods Consisting Of Other Alloy Steel .................... 8

         1.   Other Bars And Rods ........................................................................... 8

         2.   Other Alloy Steel ............................................................................... 11

     C.  The Imported Steel Grinding Rods Are Properly Classified In HTSUS Subheading
         7228.40.00.................................................................................................... 12

III. THE IMPORTED GRINDING RODS ARE NOT CLASSIFIABLE AS OTHER
     ARTICLES OF IRON OR STEEL IN HTSUS HEADING 7326 ........................................ 16

CONCLUSION.......................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) ............................................................................................. 6

Aves. In Leather, Inc. v. United States,
   423 F.3d 1326 (Fed. Cir. 2005) .......................................................................... 7

BASF Corp. v. United States,
   482 F.3d 1324 (Fed. Cir. 2007) .......................................................................... 7

Bausch & Lomb, Inc. v. United States,
   148 F.3d 1363 (Fed. Cir. 1998) .................................................................... 6, 13

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ............................................................................................. 6

Clarendon Marketing, Inc. v. United States,
   144 F.3d 1464 (Fed. Cir. 1998) .......................................................................... 7

Cummins Inc. v. United States,
   454 F.3d 1361 (Fed. Cir. 2006) .......................................................................... 8

Drygel, Inc. v. United States,
   541 F.3d 1129 (Fed. Cir. 2008) ........................................................................ 13

LeMans Corp. v. United States,
   660 F.3d 1311 (Fed. Cir. 2011) ........................................................................ 13

Link Snacks, Inc. v. United States,
   742 F.3d 962 (Fed. Cir. 2014) ............................................................................ 8

Lonza Inc. v. United States,
   46 F.3d 1098 (Fed. Cir. 1995) .......................................................................... 13

Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) ............................................................................................. 6

Nat'l Advanced Sys. v. United States,
   26 F.3d 1107 (Fed. Cir. 1994) ............................................................................ 8

Orlando Food Corp. v. United States,
   140 F.3d 1437 (Fed. Cir. 1998) .......................................................................... 7

Phone-Mate, Inc. v. United States,
    690 F. Supp. 1048, 1050 (Ct. Int'l Tr. 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) ............... 6

Pomeroy Collection, Ltd. v. United States,
    559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) ........................................................................ 7

R.T. Foods, Inc. v. United States,
    757 F.3d 1349 (Fed. Cir. 2014) ...................................................................................... 19

Sharp Microelectronics Tech., Inc. v. United States,
    122 F.3d 1446 (Fed. Cir. 1997) ...................................................................................... 13

Texas Apparel Co. v. United States,
    698 F. Supp. 932, 934 (Ct. Int'l Tr. 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989),
    *cert. denied*, 493 U.S. 1024 (1990) .............................................................................. 6

United States v. Pan Pac. Textile Group Inc.,
    276 F. Supp. 2d 1316 (Ct. Int'l Tr. 2003) ........................................................................ 6

Well Luck Co., Inc. v. United States,
    887 F.3d 1106 (Fed. Cir. 2018) ...................................................................................... 19

**Statutes**

Section 232 of the Trade Expansion Act of 1962
    19 U.S.C. § 1862 ...................................................................................................... 2, 3

**Rules**

USCIT Rule 56 .......................................................................................................... 1, 6

USCIT Rule 56(c) ........................................................................................................ 6

USCIT Rule 56.3 ................................................................................................. 3, 6, 10

**Harmonized Tariff Schedule of the United States**

GRI 1 .............................................................................................................. 7, 12, 18

GRI 3(a) ................................................................................................... 16, 19, 20, 21

GRI 3(b) ............................................................................................................... 16

GRI 3(c) ............................................................................................................... 16

GRI 6 ................................................................................................. 7, 15, 16, 19

Note 1(e) to Chapter 72 ............................................................................................... 11

Note 1(f) to Chapter 72 ........................................................................................ 5, 11, 12

Note 1(ij) to Chapter 72 ............................................................................................ 8, 9

Note 1(k) to Chapter 72 ........................................................................................ 8, 9, 10

Note 1(l) to Chapter 72 ......................................................................................... 8, 9, 10

Note 1(m) to Chapter 72 ................................................................................... 5, 8, 10, 11

Note 1(o) to Chapter 72 .............................................................................................. 10

Additional U.S. Note 2 to Chapter 72 ................................................................... 13, 14

U.S. Note 16(b)(ii) of subchapter III to Chapter 99 ........................................................ 2

Chapter 72 ....................................................................................................... *passim*

Heading 7214 ........................................................................................................... 17

Heading 7215 ..................................................................................................... 17, 20

Heading 7228 .................................................................................................... *passim*

    Subheading 7228.30.80 ..................................................................................... *passim*

    Subheading 7228.30.8050 ......................................................................................... 14

    Subheading 7228.40 .................................................................................................. 21

    Subheading 7228.40.00 ....................................................................................... *passim*

    Subheading 7228.40.0000 ......................................................................................... 17

Heading 7326 .................................................................................................... *passim*

    Subheading 7326.11 ................................................................................... 17, 18, 19, 21

    Subheading 7326.11.00 ............................................................................................... 2

    Subheading 9903.80.01 ............................................................................................... 2

**Other Authorities**

Explanatory Note to GRI 1 .............................................................................................. 7

Explanatory Note to Heading 72.14 ........................................................................... 17

Explanatory Note to Heading 72.15 ...................................................................... 17, 18

Explanatory Note to Heading 72.16 ........................................................................... 17

Explanatory Note (A) to Heading 7228 ..................................................................... 17

Explanatory Note to Heading 7326 ........................................................................ 5, 21

Part (IV)(A)(1)-(2) of the General Explanatory Notes to Chapter 72 (2017) ............................. 13

Part (IV)(C) of the General Explanatory Notes to Chapter 72 ............................................. 14, 17

Part (IV)(C)(2) of the General Explanatory Notes to Chapter 72 ......................................... 14, 15

HQ 966169 (Apr. 8, 2003) ................................................................................. 20, 21

NY H89317 (Mar. 28, 2002) ................................................................................ 14

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| ME GLOBAL, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 19-00179 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade

(USCIT), defendant, United States (the Government), hereby submits this memorandum in

support of its cross-motion for summary judgment and response in opposition to plaintiff's, ME

Global, Inc. (ME Global), motion for summary judgment.

ME Global's imported steel grinding rods satisfy the controlling Harmonized Tariff

Schedule of the United States (HTSUS) Chapter 72 definitions of "Other bars and rods of other

alloy steel," and are thus classified in heading 7228, HTSUS.  As the manufacturing process

required to render the rods into their finished form is most accurately described as "Other bars

and rods, not further worked than forged," the imported rods are specifically provided for in

HTSUS subheading 7228.40.00.  Because the subject goods are classifiable in HTSUS heading

7228, they are precluded from classification in ME Global's preferred tariff heading, HTSUS

7326, in accordance with the Explanatory Note to that heading, as well as the General Rules of

Interpretation (GRIs).  Therefore, we respectfully request that judgment be entered in our favor and that this action be dismissed.

## BACKGROUND

This matter concerns Entry No. 791-1880870-3, made at the Port of Minneapolis on August 6, 2018, which contained steel grinding rods imported from the People's Republic of China.  *See* ECF No. 7, Entry Papers.  Upon liquidation, U.S. Customs and Border Protection (CBP) classified the imported rods under HTSUS subheadings 7228.30.80 and 9903.80.01.  *Id*. Subheading 7228.30.80, HTSUS, provides in pertinent part for "Other bars and rods of other alloy steel; . . . : Other bars and rods, not further worked than hot-rolled, hot-drawn or extruded: Other."  Merchandise classified under this subheading is duty-free under the Column 1 General duty rate; however, at the time of entry, HTSUS subheading 9903.80.01 imposed 25% *ad valorem* duties pursuant to Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862 (Section 232 duties), on merchandise classified under HTSUS heading 7228.[1]

ME Global claims that its imported grinding rods should be classified under HTSUS subheading 7326.11.00, which provides for "Other articles of iron or steel: Forged or stamped, but not further worked: Grinding balls and similar articles for mills."  *See* ECF No. 9, Compl. ¶ 37.  This provision is free of regular customs duties and is not subject to additional Section 232 duties.  Although CBP classified the imported merchandise upon liquidation under HTSUS subheading 7228.30.80, the undisputed facts of the judicial record show that ME Global's steel

---

[1] At the time of entry, HTSUS subheading 9903.80.01 provided for "Products of iron or steel provided for in the tariff headings or subheadings enumerated in note 16 to this subchapter, except products of Australia, of Argentina, of South Korea, of Brazil, or any exclusions that may be determined and announced by the Department of Commerce."  In relevant part, U.S. Note 16(b)(ii) of subchapter III to Chapter 99 stated that "The rates of duty set forth in heading 9903.80.01…apply to all imported products of iron or steel classifiable in the provisions enumerated in this subdivision: bars and rods provided for in heading[]…7228."

grinding rods are, in light of the discovery materials produced in this action and the GRIs, properly classified under HTSUS subheading 7228.40.00.  This subheading provides, in relevant part, for "Other bars and rods of other alloy steel; . . . : Other bars and rods, not further worked than forged."  Like HTSUS subheading 7228.30.80, merchandise classified under this subheading is free of customs duties, but is subject to Section 232 duties.  In other words, the duties applicable to the entry at issue are the same regardless of whether the imported merchandise is correctly classified under HTSUS subheading 7228.30.80 or 7228.40.00.

Where accurate, plaintiff's Rule 56.3 Statement of Material Facts Not In Dispute and moving papers set forth a detailed and technical description of the imported merchandise.  Rather than recite such detail here, we focus the Court's attention on the factual information relevant to the appropriate classification of the imported steel grinding rods: the chemical composition of the rods, and the manner in which the rods are rendered into their finished form.

With respect to the chemical composition of the rods, ME Global represents that "{m}etallurgical requirements for these rods specify that they may contain no more than 0.025% of phosphor, no more than 0.025% of sulfur, between 0.20 and 0.40% of silicon, and 0.20 to 0.60% of chromium."  ECF No. 20-4, Schlue Decl. ¶ 9 & Ex. A to Schlue Decl., Pl.'s Responses to Def's 1st Interrogatories (1st Rog Responses) No. 5.  Quality Inspection Certificates (QICs) for the imported grinding rods provided by ME Global indicate that the chemical composition of the rods contain by weight 0.60 to 1.0% of carbon, 0.70 to 1.0% of manganese, 0.20 to .60% of chromium, 0.10 to .40% of silicon, and less than .025% of both phosphorus and sulfur.  *See* Ex. E to Schlue Decl.; Def's Ex. A, Ex. M to Pl's Responses to Def's 2nd Requests for Production (QICs & Testing Charts).  ME Global also states that the specific chromium content for its imported steel grinding rods "fluctuated from 0.3% to 0.39% by weight."  Def's Ex. B, Pl.'s

Responses to Def's 2nd Interrogatories (2nd Rog Responses) No. 2.  This statement is confirmed by charts provided by ME Global detailing the metallurgical property testing of the rods since 2016.  *See* QICs & Testing Charts.  In addition to the elements set forth on the QICs, the testing charts also list the percentage by weight of the nickel, copper, molybdenum, and aluminum content of the imported rods.  *Id.*

With respect to the manufacturing processes required to render the imported steel grinding rods into their finished form, first steel blooms are heated, hot-rolled on stands, and then cooled to form steel bars.  *See* 2nd Rog Responses No. 3(a).  These input steel bars are then cut to grinding mill length for the intended customer and heated in an Inductoforge.  *Id.* at No. 3(d).  After which, the steel bars are processed by a series of forging dies to ensure proper sizing tolerances and straightening while passing through a water quenching system with a computerized temperature control.  *Id.*  Once this manufacturing process has been completed, subject to further quality control checks, the resulting products are steel grinding rods suitable for milling.  *Id*.

We cross-move for summary judgment and oppose ME Global's motion for summary judgment because the imported steel grinding rods are properly classified in HTSUS 7228.40.00 as "Other bars and rods of other alloy steel … not further worked than forged."

## QUESTIONS PRESENTED

Whether the products at issue are classifiable under HTSUS heading 7228 or 7326, and whether the products are classified under HTSUS subheading 7228.30.80 or 7228.40.00.

## SUMMARY OF ARGUMENT

ME Global's imported merchandise is classifiable in HTSUS heading 7228 as "Other bars and rods of other alloy steel."  The controlling notes to HTSUS Chapter 72 define "Other

bars and rods," in part, as rods and bars that are not elsewhere defined in the chapter, and define other bars and rods of "other alloy steel" by their chemical composition. Because ME Global's imported steel grinding rods are not semi-finished products, flat-rolled products, hot-rolled bars and rods in irregularly wound coils, or wire, as those terms are defined by HTSUS Chapter 72, and because the imported rods have a uniform cross section along their length, as required by HTSUS Chapter 72 Note 1(m), the imported grinding rods are "Other bars and rods" of HTSUS heading 7228. Further, because ME Global's steel grinding rods contain .3% or more of chromium, the rods satisfy the definitional criteria of "other alloy steel" set forth by HTSUS Chapter 72 Note 1(f). Accordingly, the imported merchandise is classifiable under HTSUS heading 7228 as "Other bars and rods of other alloy steel."

Because ME Global's imported steel grinding rods are specifically described by HTSUS heading 7228, they cannot also be classifiable in HTSUS heading 7326, a basket provision providing for "Other articles of iron or steel." As the GRIs and the Explanatory Note to HTSUS heading 7326 make clear, articles may be classifiable in that heading only if they are not elsewhere provided for in the tariff statute. Consequently, the imported merchandise is precluded from classification in HTSUS heading 7326.

The imported steel grinding rods are accurately classified in HTSUS subheading 7228.40.00 as "Other bars and rods of other alloy steel … not further worked than forged," and not as "Other bars and rods of other alloy steel … not further worked than hot-rolled, hot-drawn or extruded: Other," of HTSUS subheading 7228.30.80. Because the rods are not "further worked," as that term is defined by HTSUS Chapter 72, and because "not further worked than forged" accurately describes ME Global's grinding rods in their final, finished form, the rods are specifically provided for in HTSUS subheading 7228.40.00.

5

Accordingly, our cross-motion for summary judgment should be granted, plaintiff's

motion for summary judgment should be denied, and this action should be dismissed.

## ARGUMENT

### I.   STANDARD OF REVIEW

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  On a motion for summary judgment, the Court determines whether there are any factual

disputes that are material to the resolution of the action.  *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct.

Int'l Tr. 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations

omitted).  "The court may not resolve or try factual issues on a motion for summary judgment."

*Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Tr. 1988), *aff'd*, 867 F.2d

1404 (Fed. Cir. 1989) (citation omitted).  In determining whether a genuine issue of fact exists,

the Court reviews the evidence submitted, drawing all inferences against the moving party.  *See*

*United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (Ct. Int'l Tr. 2003);

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This Court may resolve a classification issue by means of summary judgment.  *See*

*Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998).  Summary

judgment is appropriate where the nature of the merchandise is not in question and the sole issue

before the Court is the proper classification of the merchandise.  *See id*.  In the absence of

genuine factual issues, the propriety of summary judgment turns on the proper construction of

6

the HTSUS, which is a question of law.  *See Clarendon Marketing, Inc. v. United States*, 144

F.3d 1464, 1466 (Fed. Cir. 1998).  Here, there are no material facts in dispute to preclude

summary judgment in favor of the Government.

## II.    ME GLOBAL'S STEEL GRINDING RODS ARE CLASSIFIED IN HTSUS HEADING 7228 AS OTHER BARS AND RODS OF OTHER ALLOY STEEL

### A.    General Rules of Interpretation

Merchandise imported into the United States is classified under the HTSUS.  The tariff

classification of merchandise under the HTSUS is governed by the principles set forth in the

GRIs and the Additional U.S. Rules of Interpretation.  *See Orlando Food Corp. v. United States*,

140 F.3d 1437, 1439 (Fed. Cir. 1998); *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26

(Fed. Cir. 2007).

GRI 1 provides, in relevant part, that "for legal purposes, classification shall be

determined according to the terms of the headings and any relative Section or Chapter Notes and,

provided such headings or Notes do not otherwise require, according to the {remaining GRIs.}"

As interpreted by its Explanatory Note, GRI 1 establishes that "the terms of the headings and any

relative section or Chapter Notes are paramount, *i.e.*, they are the first consideration in

determining classification."  *See also The Pomeroy Collection, Ltd. v. United States*, 559 F.

Supp. 2d 1374, 1385 (Ct. Int'l Trade 2008).  GRI 6 extends the principles of GRI 1 to the

subheading level.  The HTSUS section and chapter notes "are not optional interpretive rules,"

but instead have the force of statutory law.  *Aves. In Leather, Inc. v. United States*, 423 F.3d

1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted).

It is well-established that the determination of whether a particular product falls within a

tariff classification is a two-step process: first, the meaning of terms within the provision must be

ascertained, and second, a determination must be made as to whether the merchandise at issue

falls within the description of such terms as properly construed.  *See Nat'l Advanced Sys. v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994).  "When there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'"  *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965-66 (Fed. Cir. 2014) (quoting *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

### B.     The Imported Goods Are Other Rods Consisting Of Other Alloy Steel

In accordance with the terms of HTSUS heading 7228 and the controlling HTSUS Chapter 72 notes, ME Global's steel grinding rods are properly classified in HTSUS heading 7228.  HTSUS heading 7228 provides for "Other bars and rods of other alloy steel; angles, shapes and sections, of other alloy steel; hollow drill bars and rods, of alloy or non-alloy steel."  Although it is undisputed that the imported goods are rods of alloy steel, *see e.g.*, Compl. ¶¶ 6-7, the heading phrases "Other bars and rods" and "other alloy steel" are specifically defined by the HTSUS Chapter 72 notes, and are therefore, discussed below.

#### 1.   Other Bars And Rods

HTSUS Chapter 72 Note 1(m) defines "Other bars and rods," in pertinent part, as "{p}roducts which do not conform to any of the definitions at (ij), (k) or (l) above or to the definition of wire, which have a uniform solid cross section along their whole length in the shape of circles, segments of circles, ovals, rectangles (including squares), triangles or other convex polygons…"  Because the imported steel grinding rods do not fit within the Chapter 72 definitions of Notes 1(ij), (k) or (l), or to the definition of wire, and because the rods have a uniform solid cross section along their whole length, ME Global's imported rods are "Other bars and rods," as defined by HTSUS Chapter 72 Note 1(m).

HTSUS Chapter 72 Note 1(ij) defines "Semifinished products" in relevant part, as "{c}ontinuous cast products of solid section, whether or not subjected to primary hot-rolling; and Other products of solid section, which have not been further worked than subjected to primary hot-rolling or roughly shaped by forging, including blanks for angles, shapes or sections."  First, the imported grinding rods are finished, not semifinished, products.  *See* 1st Rog Responses No. 6 ("No further processing of the grinding rods is performed in the United States after importation.").

Further, ME Global's grinding rods are not simply continuous cast products of solid section or other products of solid section that have not been further worked beyond primary hot-rolling or roughly shaped by forging.  On the contrary, ME Global's imported grinding rods undergo multiple, controlled manufacturing processes that begin with heat-treated steel inputs and end with finished rods of exacting size, dimension, and tolerances.  Indeed, to manufacture ME Global's grinding rods, steel blooms are first heated, hot-rolled and then cooled to form steel bars at one steel mill.  *See* 2nd Rog Responses No. 3(a).  At a separate plant, the input steel bars are cut to length and heated in an Inductoforge to the required temperature, and are then processed by a series of specific forging dies and a water quenching system with computerized temperature control to ensure proper sizing tolerances and straightening.  *Id*. at No. 3(d).  This entire manufacturing process, spanning two separate facilities, results in finished rods that are neither the product of continuous casting only, nor mere rough-shaped foraging.  Consequently, the imported grinding rods are not "semifinished products" of HTSUS Chapter 72 Note 1(ij).

Next, neither HTSUS Chapter 72 Note 1(k), which defines "Flat-rolled products," nor HTSUS Chapter 72 Note 1(l), which defines "Bars and rods, hot-rolled, in irregularly wound coils," is applicable here.  There is no indication from any of the discovery material produced by

plaintiff, nor from its moving papers, agreed-upon facts, or allegations in the Complaint, that the imported steel grinding rods are in any way the product of flat-rolling or hot-rolled irregularly wound coils.  As such, ME Global's grinding rods do not conform to the definitions set forth in HTSUS Chapter 72 Notes 1(k) and (l).

Similarly, there is no indication from the discovery produced, plaintiff's moving papers, agreed-upon facts, and allegations in the Complaint that the subject grinding rods are "wire" within the meaning of Chapter 72.  HTSUS Chapter 72 Note 1(o) defines "wire" as "{c}old-formed products in coils, of any uniform solid cross section along their whole length, which do not conform to the definition of flat-rolled products."  ME Global's grinding rods are not cold-formed products in coils.  Rather, it is undisputed that the rods are rendered by both hot-rolling and forging.  *See* Compl. ¶ 7; ECF No. 20-3, Pl.'s Rule 56.3 Statement of Material Facts Nos. 7-8, 11, 15-16; 2nd Rog Responses Nos. 3(a), (c), and (d).

Finally, in accordance with the requirements of HTSUS Chapter 72 Note 1(m), the imported steel grinding rods "have a uniform cross section along their whole length" consisting, throughout their entire mass, of martensite on the surface of the rods and pearlite in the center of the rods.  *See* Compl. ¶¶ 10, 15, 16; Pl.'s Rule 56.3 Statement of Material Fact Nos. 10, 13, 16; Ex. D to Schlue Decl. at 00010 ("It is important to note that the heat treatment design for grinding rods should be thermally continuous from one end of the rod to the other.").  Although plaintiff has not made any specific representations regarding the shape of the uniform solid cross section of the rods, there is no indication from the discovery produced, plaintiff's moving papers, agreed-upon facts, and allegations in the Complaint that the cross-section of the rods is of a shape other than those listed in HTSUS Chapter 72 Note 1(m).

Accordingly, for these reasons, the imported merchandise satisfies HTSUS Chapter 72 Note 1(m)'s definition of "Other bars and rods," and is therefore properly classified as such.

### 2. Other Alloy Steel

"Other bars and rods" of HTSUS heading 7228 must also be "of other alloy steel" to be classifiable in the heading.  HTSUS Chapter 72 Note 1(f) defines "other alloy steel" as follows:

1. In this chapter and, in the case of notes (d), (e) and (f) below throughout the tariff schedule, the following expressions have the meanings hereby assigned to them:

   (f)    Other alloy steel

   Steels not complying with the definition of stainless steel[2] and containing by weight one or more of the following elements in the proportion shown:

   - 0.3 percent or more of aluminum
   - 0.0008 percent or more of boron
   - 0.3 percent or more of chromium
   - 0.3 percent or more of cobalt
   - 0.4 percent or more of copper
   - 0.4 percent or more of lead
   - 1.65 percent or more of manganese
   - 0.08 percent or more of molybdenum
   - 0.3 percent or more of nickel
   - 0.06 percent or more of niobium
   - 0.6 percent or more of silicon.
   - 0.05 percent or more of titanium
   - 0.3 percent or more of tungsten (wolfram)
   - 0.1 percent or more of vanadium
   - 0.05 percent or more of zirconium
   - 0.1 percent or more of other elements (except sulfur, phosphorus, carbon and nitrogen), taken separately.

HTSUS Chapter 72 Note 1(f) thus requires that, to be considered other alloy steel, non-stainless steel must contain by weight ***one or more*** of the above-listed elements in the

---

[2] HTSUS Chapter 72 Note 1(e) defines stainless steel as "Alloy steels containing, by weight 1.2 percent or less of carbon and 10.5 percent or more of chromium, with or without other elements."  ME Global's grinding rods do not satisfy the criteria for stainless steel.

proportions shown.  The subject goods meet this criteria.  HTSUS Chapter 72 Note 1(f) requires

"0.3 percent or more of chromium" in the steel to be considered other alloy steel.  In the

metallurgical testing performed on ME Global's steel grinding rods over a period of years, the

chromium content "fluctuated from 0.3% to 0.39% by weight," and never dipped below the 0.3%

threshold requirement.  2nd Rog Responses No. 2; *see also* QICs & Testing Charts.  On account

of the imported merchandise's chromium content alone, ME Global's grinding rods satisfy the

Note's criteria.[3]  As a result, pursuant to a GRI 1 analysis, ME Global's imported merchandise is

described by the terms of HTSUS heading 7228 ("Other bars and rods of other alloy steel") and

satisfies HTSUS Chapter 72 Note 1(f)'s controlling definition of "other alloy steel" (containing

more than "0.3 percent or more of chromium").  Accordingly, ME Global's imported goods are

"Other…rods of other alloy steel," classifiable in HTSUS heading 7228.

### C.   The Imported Steel Grinding Rods Are Properly Classified In HTSUS Subheading 7228.40.00

ME Global's grinding rods of other alloy steel are potentially classifiable in two

subheadings to HTSUS heading 7228 on account of the rods being formed by both hot-rolling

and forging.  HTSUS subheading 7228.30.80 covers, in pertinent part, "Other bars and rods of

other alloy steel; . . . : Other bars and rods, not further worked than hot-rolled, hot-drawn or

extruded: Other."  HTSUS subheading 7228.40.00, provides, in relevant part, for "Other bars and

rods of other alloy steel; . . . : Other bars and rods, not further worked than forged."

---

[3] We note that the metallurgical testing performed on ME Global's steel grinding rods reveals
that the molybdenum content of the rods fluctuates between .07% to .09% by weight, and thus
also likely satisfies HTSUS Chapter 72 Note 1(f)'s requirement that "other alloy steel" contain
"0.08 percent or more of molybdenum."  *See* QICs & Testing Charts.  However, because some of
the testing performed on ME Global's steel grinding rods indicates a molybdenum content of less
than "0.08 percent or more of molybdenum," we cannot definitively conclude that the steel
grinding rods imported under Entry No. 791-1880870-3 satisfy HTSUS Chapter 72 Note 1(f)'s
molybdenum content requirements for "other alloy steel."

Part (IV)(A)(1)-(2) of the General Explanatory Notes to Chapter 72 (2017)[4] defines hot-rolling and forging as follows:

   (1)   **Hot-rolling** means rolling at a temperature between the point of
          rapid recrystallisation and that of the beginning of fusion.  The
          temperature range depends on various factors such as the
          composition of the steel.  As a rule, the final temperature of the
          work-piece in hot-rolling is about 900 °C.

   (2)   **Forging** means the hot deformation of the metal in the mass by
          means of drop hammers or on forging presses, to obtain pieces of
          any shape.

It is undisputed that to manufacture ME Global's imported grinding rods, steel blooms are heated, *hot-rolled*, and cooled to form steel bars at one steel mill.  *See* 2nd Rog Responses No. 3(a).  At a separate plant, the steel bars are then cut to length and heated, and then processed, in part, by specific *forging* dies.  *Id.* at No. 3(d).  The subject rods have therefore been both hot-rolled and forged, rendering them potentially classifiable in either subheading.

Both subheadings also require that the rods have not been "further worked" beyond being "hot-rolled" or "forged."  As plaintiff correctly explains in its moving papers, Pl. Mot. at 12-14, the tariff term "further worked" has a specific meaning that is defined by Additional U.S. Note 2 to HTSUS Chapter 72 as follows:

             For the purposes of this chapter, unless the context provides
             otherwise, the term "further worked" refers to products subjected
             to any of the following surface treatments: polishing and

---

[4] It is long settled that "[w]hile the Explanatory Notes do not constitute controlling legislative history, they do offer guidance in interpreting HTS subheadings." *Lonza Inc. v. United States*, 46 F.3d 1098, 1109 (Fed. Cir. 1995).  The Explanatory Notes significantly clarify the reach of the HTSUS subheadings and can manifest legislative intent.  *Bausch & Lomb*, 148 F.3d 1363; *Sharp Microelectronics Tech., Inc. v. United States*, 122 F.3d 1446 (Fed. Cir. 1997).  The "Explanatory Notes that accompany each Chapter of the HTSUS, while not legally binding, are "persuasive" and are "generally indicative" of the proper interpretation of the tariff provision*." LeMans Corp. v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011) (citation omitted).  In fact, "absent persuasive reasons to disregard" the text of a relevant Explanatory Note, the Explanatory Notes are routinely employed to determine the meaning of a tariff term.  *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008).

> burnishing; artificial oxidation; chemical surface treatments such
> as phosphatizing, oxalating and borating; coating with metal;
> coating with nonmetallic substances (e.g., enameling, varnishing,
> lacquering, painting, coating with plastics materials); or cladding.

Part (IV)(C) of the General Explanatory Notes to Chapter 72 elaborates that "finished products

may be subjected to further finishing treatments" such as mechanical working or "{s}urface

treatments or other operations, including cladding, to improve the properties or appearance of the

metal, protect it against rusting and corrosion, etc."  This Explanatory Note also clarifies that

> Except as otherwise provided in the text of certain headings, such
> treatments do not affect the heading in which the goods are
> classified.  They include [among other treatments and operations
> listed in subparts (b) – (g)]:
>
> (a) Annealing, hardening, tempering, case-hardening, nitriding *and
> similar heat treatments* to improve the properties of the metal.

Part (IV)(C)(2) of the General Explanatory Notes to Chapter 72 (emphasis added).

Here, the imported steel grinding rods are not subject to any of the enumerated "further

worked" surface treatments of Additional U.S. Note 2 to HTSUS Chapter 72 that would remove

the rods from classification in HTSUS subheading 7228.30.80 or 7228.40.00.  Although ME

Global's rods undergo heat-treatment in addition to hot-rolling and forging to achieve the

required properties of the rods (*i.e.*, martensite on the surface and pearlite in the center), the

above-discussed Explanatory Note recognizes that such heat treatment "do[es] not affect the

heading in which the goods are classified," and thus does not amount to the rods being "further

worked."  On this point, the parties are in agreement.  *See* Pl. Mot. at 12-14; *see also* NY

H89317 (Mar. 28, 2002) (citing Part (IV)(C)(2) of the General Explanatory Notes to Chapter 72

in support of CBP's classification determination that "hot-rolled *heat-treated* alloy steel grouser

bars" are appropriately classified in HTSUS subheading 7228.30.8050) (emphasis added).

14

In order to resolve whether HTSUS subheading 7228.30.80 or 7228.40.00 is the correct

tariff designation for the imported merchandise, GRI 6 instructs that

> For legal purposes, the classification of goods in the subheadings
> of a heading shall be determined according to the terms of those
> subheadings and any related subheading notes and, *mutatis
> mutandis*, to the above rules, on the understanding that only
> subheadings at the same level are comparable.  For the purposes of
> this rule, the relative section, chapter and subchapter notes also
> apply, unless the context otherwise requires.

At the comparable eight-digit level, the terms of HTSUS subheading 7228.30.80 ("Other

bars and rods, not further worked than hot-rolled, hot-drawn or extruded: Other") and HTSUS

subheading 7228.40.00 ("Other bars and rods, not further worked than forged") both appear to

describe the imported merchandise insofar as ME Global's grinding rods are the product of hot-

rolling and forging.

However, upon being hot-rolled, the imported merchandise has yet to be rendered into its

final, finished form.  To be rendered into a finished product, the steel grinding rods have to be

cut, heated, and forged at a second facility *after* steel bar inputs have first been heated, hot-

rolled, and cooled at prior facility.  *See* 2nd Rog Responses Nos. 3(a), (d).  The subheading phrase

"not further worked than hot-rolled…" thus describes ME Global's grinding rods at an

intermediate stage of their production only.  In contrast, the phrase "not further worked than

forged" describes the imported merchandise in its final form.  Indeed, the tariff's definitional

restrictions as to what constitutes "further worked" surface treatments applies only to "finished

products [that] may be subjected to further finishing treatments."  Part (IV)(C) of the General

Explanatory Notes to Chapter 72.  Only upon being forged at the second production facility are

ME Global's imported grinding rods "finished products."  Accordingly, the imported

merchandise is properly classified in HTSUS subheading 7228.40.00 only, as "Other bars and rods, not further worked than forged."

To the extent that the Court considers the imported merchandise to be *prima facie* classifiable in both HTSUS subheadings 7228.30.80 and 7228.40.00, GRI 6 and GRI 3(a) require that the subheading "which provides the most specific description shall be preferred to [sub]headings providing a more general description." On this account, the plain language of HTSUS subheading 7228.40.00 shows that it is the most specific description of the imported steel grinding rods because the provision is limited to "Other bars and rods" that have been "forged." In contrast, HTSUS subheading 7228.30.80 includes "Other bars and rods" that may have been subject to one of three different processes: "hot-rolled, hot-drawn, or extruded." Because the manufacturing process of HTSUS subheading 7228.40.00 is more circumscribed than the manufacturing processes of HTSUS subheading 7228.30.80, pursuant to a GRI 3(a) analysis at the eight-digit subheading level, the imported merchandise is properly classified in HTSUS subheading 7228.40.00.[5]

## III.   THE IMPORTED GRINDING RODS ARE NOT CLASSIFIABLE AS OTHER ARTICLES OF IRON OR STEEL IN HTSUS HEADING 7326

ME Global acknowledges that the steel bars ("green rods") which are rendered into the finished grinding rods are other bars and rods of other alloy steel of HTSUS subheading 7228.40.00. *See* 1st Rog Responses No. 5 ("The manufacturing process for ME Global's grinding rods begins with long, high carbon forged alloy steel bars that have a material hardness

---

[5] To the extent that the Court finds that both subheadings are equally specific, HTSUS subheading 7228.40.00 remains the appropriate tariff designation. As the undisputed facts show, the imported rods are not composite goods subject to GRI 3(b). Therefore, classifying the goods under HTSUS subheading 7228.40.00 is still appropriate because, in accordance with GRI 3(c), that subheading "occurs last in numerical order" when compared to HTSUS subheading 7228.30.80.

of 25-35 HRC, and are classifiable under subheading 7228.40.0000, HTS.").  ME Global argues,

however, that

> (i) the unique processing which the instant grinding rods undergo
> remove them from Heading 7228, HTSUS, giving them the
> character of a good classified under a different Heading; (ii) the
> use of the grinding rods, being an essential part of their identity, is
> an essential consideration in their classification; and (iii) the
> grinding rods are "similar articles" of a kind described in
> subheading 7326.11, HTSUS, sharing not only common uses and
> characteristics with the specifically identified products in the
> heading (grinding balls), but also sharing the subheading's
> limitation, as they are designed exclusively "for mills."

Pl. Mot. at 21.  For the reasons discussed below, these arguments are not legally sound, and must

be rejected.

In support of its argument that the imported steel grinding rods have been processed out

of heading HTSUS 7228 and into HTSUS subheading 7326.11, ME Global relies on the

Explanatory Note to HTSUS heading 7215, which provides, in relevant part, that

> The bars and rods of this heading may : …
>
> (2) have been subjected to working (such as drilling or sizing, or to
> further surface treatments than are allowed for products of heading
> 72.14[6], such as plating, coating, or cladding (see Part (IV) (C) of
> the General Explanatory Note to this Chapter), provided that they
> do not thereby assume the character of articles or of products
> falling within other headings[.]

Although HTSUS heading 7215 is not at issue in this litigation, Explanatory Note (A) to HTSUS

heading 7228 provides that "The provisions of the Explanatory Notes to headings 72.14 to 72.16

apply, *mutatis mutandis*, to the products of this heading."

---

[6] HTSUS heading 7214 provides for "Other bars and rods of iron or nonalloy steel, not further
worked than forged, hot-rolled, hot-drawn or hot-extruded, but including those twisted after
rolling."

ME Global's reliance on the Explanatory Note to HTSUS heading 7215 is misguided for several reasons.  First, the subheading "Other bars and rods, not further worked than forged" accurately describes other bars and rods of other alloy steel that have been forged and heat-treated, like ME Global's grinding rods.  As explained above, undergoing heat-treatment in addition to forging does not mean that the rods have "been subjected to working … or to further surface treatments" that renders the rods "not further worked than forged," and thus removed from classification in HTSUS subheading 7228.40.00.  That a grinding rod may undergo additional heat-treatment, therefore, does not render the rod removed from HTSUS heading 7228, as ME Global contends.  Indeed, grinding rods of other alloy steel that are subject to additional heat-treatment, like ME Global's imported grinding rods, and grinding rods of other alloy steel that are not subject to additional heat-treatment, such as "green rods," are both grinding rods, and both are classifiable in HTSUS heading 7228.  *See* Ex. B to Schlue Decl., Pl.'s Responses to Def's 1st Requests for Production No. 11.

Second, the Explanatory Note to HTSUS heading 7215 relied upon by ME Global specifies that goods falling under the heading may not be so worked that they "assume the character of articles or of products falling within other *headings*."  Explanatory Note to HTSUS heading 7215 (emphasis added).  ME Global improperly equates its grinding rods to "Grinding balls and similar articles for mills" of *subheading* 7326.11, HTSUS.  *See* Pl. Mot. at 14-21. However, to the extent that the Explanatory Note to HTSUS heading 7215 advises that further worked articles classifiable in HTSUS heading 7228 should be compared to other articles, the Note specifies that the comparison is to take place at the heading—not the subheading—level.

Further, ME Global's classification comparison between one tariff heading and another tariff subheading also runs afoul of the GRIs.  *See e.g.*, GRI 1 (providing, in relevant part, that

"for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the {remaining GRIs.}"); GRI 3(a) (providing, in part, that "{t}he heading which provides the most specific description shall be preferred to headings providing a more general description."); and GRI 6 (providing, in pertinent part, that "only subheadings at the same level are comparable."). Indeed, "{t}he possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings." *Well Luck Co., Inc. v. United States*, 887 F.3d 1106, 1111 (Fed. Cir. 2018) (internal quotation marks and citations omitted). Which is exactly what ME Global attempts to do here: deploy HTSUS subheading 7326.11 to expand the scope of HTSUS heading 7326. But ME Global cannot do so.

HTSUS heading 7326 provides for "Other articles of iron or steel." By its plain terms, the heading is too broad to warrant a productive characteristic comparison to articles that are classifiable as "Other bars and rods of other alloy steel" of HTSUS heading 7228. The characteristics of a bar or rod of other alloy steel classifiable in HTSUS heading 7228 cannot be said to be more accurately provided for in a generalized catch-all heading for "Other articles of iron or steel."

HTSUS heading 7326 is a basket provision. Classification in residual or basket provisions is only appropriate if the imported merchandise is not more specifically described elsewhere in the tariff. *See R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014) ("A basket provision is not a specific provision. Therefore, {c}lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically.") (citations and internal quotation marks omitted). As

19

demonstrated above, ME Global's steel grinding rods satisfy the controlling HTSUS Chapter 72

Notes that define "Other bars and rods of other alloy steel," and are thus specifically covered by

HTSUS heading 7228. *See* HQ 966169 (Apr. 8, 2003) (noting that "…HTSUS headings 7215,

7222, and 7228 are not residual provisions for articles of steel, they are specific provisions for

other bars of steel."). As a consequence, because HTSUS heading 7228 specifically describes

the imported grinding rods, the rods cannot also be classified in the residual "other" heading of

HTSUS, 7326, as "Other articles of iron or steel."

This conclusion is reinforced by the Explanatory Note to Heading 7326, which states as

follows:

> This heading covers all iron or steel articles obtained by forging or
> punching, by cutting or stamping or by other processes such as
> folding, assembling, welding, turning, milling or perforating **other
> than** articles included in the preceding headings of this Chapter or
> covered by Note 1 to Section XV or included in **Chapter 82** or **83**
> or more specifically covered elsewhere in the Nomenclature.

(emphasis in original). Pursuant to this Explanatory Note, ME Global's steel grinding rods could

only be classified in heading 7326, HTSUS, if the grinding rods were not more specifically

covered elsewhere in the tariff statute. Since the imported rods are articles specifically covered

by HTSUS heading 7228, they are precluded from classification in heading 7326, HTSUS.

Consequently, because a given article cannot be both "specifically covered elsewhere in

the Nomenclature" and *prima facie* classifiable in HTSUS heading 7326, a GRI 3(a) relative

specificity analysis is not warranted here, despite ME Global's claims to the contrary. Pl. Mot. at

22-24. In relevant part, GRI 3(a) provides that when "goods are, *prima facie*, classifiable under

two or more headings, classification shall be effected as follows: (a) The heading which provides

the most specific description shall be preferred to headings providing a more general

description…" Even if a GRI 3(a) analysis were appropriate here, the relevant portion of

HTSUS heading 7228, "Other bars and rods of other alloy steel," provides a more specific

description than HTSUS heading 7326, "Other articles of iron or steel."  *See* HQ 966169.  ME

Global compounds its erroneous reliance on GRI 3(a) by improperly conducting a relative

specificity analysis at the subheading level (*i.e.*, between HTSUS subheadings 7228.40 and

7326.11), and not at the heading level, as the GRIs require.

Finally, we note that both HTSUS headings 7228 ("Other bars and rods of other alloy

steel") and 7326 ("Other articles of iron or steel") do not describe the articles classified

thereunder by their use.  As explained above, whether a given bar or rod is an "other" bar or rod

of alloy steel depends entirely on whether the controlling HTSUS Chapter 72 criteria for such

products is satisfied.  And HTSUS heading 7326 is a basket provision.  Use is not a

consideration for goods classified in either heading.  Thus, there is no merit to ME Global's

argument that the use of the grinding rods is an essential consideration in their classification.  Pl.

Mot. at 21.

In any event, because the imported steel grinding rods are classifiable as "Other bars and

rods of other alloy steel" in HTSUS heading 7228, they are precluded from classification in

HTSUS heading 7326 by operation of the Explanatory Note to Heading 7326 and the GRIs.  As a

result, ME Global's motion must be denied.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court grant our cross-motion for

summary judgment, deny plaintiff's motion for summary judgment, enter judgment in our favor

and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

21

                                               PATRICIA M. McCARTHY
                                               Director

By:    /s/ Justin R. Miller
            JUSTIN R. MILLER
            Attorney-In-Charge
            International Trade Field Office

Of Counsel:                     /s/ Alexander Vanderweide

Valerie Sorensen-Clark              ALEXANDER VANDERWEIDE
Office of the Assistant Chief Counsel    Senior Trial Counsel
International Trade Litigation          Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection    Commercial Litigation Branch
                                      26 Federal Plaza
                                      New York, New York 10278
                                      Tel. (212) 264-9230 or 0482
                                      Attorneys for Defendant

Dated: December 20, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| ME GLOBAL, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 19-00179 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, ALEXANDER VANDERWEIDE, a senior trial counsel in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field

Office, who is responsible for the Government's December 20, 2021 cross-motion for summary

judgment and response in opposition to plaintiff's motion for summary judgment, relying upon

the word count feature of the word processing program used to prepare the brief, certifies that

this cross-motion and response complies with the word count limitation under the Court's

chambers procedures, and contains 7788 words.

/s/ Alexander Vanderweide