UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| ME GLOBAL, INC., | : |
| | : |
| | : |
| Plaintiff, | : Court No. 19-00179 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:
Valerie Sorensen-Clark
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

ALEXANDER VANDERWEIDE
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-0482
Attorneys for Defendant

Dated: March 21, 2022

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 2

I.   HTSUS HEADING 7228 SPECIFICALLY COVERS THE IMPORTED
     MERCHANDISE .................................................................................................. 2

     A.  The Imported Rods Have Not Been Processed Out Of HTSUS Heading 7228 ......... 2

     B.  This Case Is Not Akin To *Motor Wheel* And *Amcor* .................................................. 5

     C.  HTSUS Headings 7228 And 7326 Are Not Use Provisions ...................................... 8

     D.  ME Global's Analysis Is Unsupported By The GRI And Controlling Precedent ....... 8

CONCLUSION ........................................................................................................... 13

## TABLE OF AUTHORITIES

### Cases

*Airflow Tech., Inc. v. United States*,
     524 F.3d 1287 (Fed. Cir. 2008) ..................................................................................... 4

*Amcor Flexibles Singen GmbH v. Unites States*,
     425 F. Supp. 3d 1287 (Ct. Int'l Tr. 2020) ................................................... 5, 6, 7, 8

*Aves. In Leather, Inc. v. United States*,
     423 F.3d 1326 (Fed. Cir. 2005) ..................................................................................... 4

*BenQ Am. Corp. v. United States*,
     646 F.3d 1371 (Fed. Cir. 2011) ............................................................................ 10, 11

*Len-Ron Mfg. Co., Inc.  v. United States*,
     334 F.3d 1304 (Fed. Cir. 2003) ...................................................................................11

*Motor Wheel Corp. v. United States*,
     19 C.I.T. 385 (1995) ............................................................................... 5, 6, 7, 9

*Orlando Food Corp. v. United States*,
     140 F.3d 1437 (Fed. Cir. 1998) ................................................................................... 10

*R.T. Foods, Inc. v. United States*,
     757 F.3d 1349 (Fed. Cir. 2014) ............................................................................ 10, 12

*Rubie's Costume Co. v. United States*,
     337 F.3d 1350 (Fed. Cir. 2003) ..................................................................................... 4

*StoreWALL, LLC v. United States,*
  644 F.3d 1358 (Fed. Cir. 2011) ........................................................................... 3

*Warner-Lambert Co. v. United States,*
  407 F.3d 1207 (Fed. Cir. 2005) ......................................................................... 11

*Well Luck Co., Inc. v. United States,*
  887 F.3d 1106 (Fed. Cir. 2018) ......................................................................... 10


**Harmonized Tariff Schedule of the United States**

General Note 3(h)(vi) ................................................................................... 9, 10

General Note 7(f) ............................................................................................... 9

General Rules of Interpretation (GRI) .......................................................... 2, 9

  GRI 1 ................................................................................... 1, 9, 10, 13

  GRI 3(a) ........................................................................................... 10

Chapter 39

  Heading 3921 ........................................................................................ 7

Chapter 72 ............................................................................................. 1, 8, 11

  Note 1(k) ..................................................................................... 6, 7, 9

  Note 1(f) .............................................................................. 1, 3, 4, 8, 10

  Note 1(m) ...................................................................................... *passim*

  Heading 7208 ................................................................................... 6, 7

    Subheading 7208.90.00 .................................................................. 6

  Heading 7215 ............................................................................ 3, 4, 5, 8

  Heading 7228 .................................................................................. *passim*

    Subheading 7228.30 ...................................................................... 3

    Subheading 7228.40.00 ........................................................... 1, 3, 13

Subheading 7228.50.00 ................................................................................ 3

Chapter 73

Heading 7326 ............................................................................... *passim*

Subheading 7326.11 ................................................................. *passim*

Subheading 7326.19.10 ............................................................. 6

Chapter 76

Note 1(d) ................................................................................ 7

Heading 7606 .......................................................................... 7

Heading 7607 .......................................................................... 7

## **Other Authorities**

HQ 966169 (Apr. 8, 2003) .......................................................... 11

HQ H217701 (August 14, 2013) .................................................. 12

HQ H217699 (May 9, 2014) ........................................................ 12

General Explanatory Notes to Chapter 72 Part (IV)(C) ................... 5, 7

General Explanatory Notes to Chapter 72 Part (IV)(C)(2) ................ 5

Explanatory Note to HTSUS heading 7214 ................................. 3

Explanatory Note to HTSUS heading 7215 ............................. 3, 6, 7

Explanatory Note to HTSUS heading 7216 ................................. 3

Explanatory Note (A) to HTSUS heading 7228 ........................... 3

Explanatory Note to Heading 7326 ........................................ 2, 13

*Beveling*, The Free Dictionary,
    https://www.thefreedictionary.com/beveling (last visited March 1, 2022) .......... 11

*Notched*, Merriam-Webster,
    https://www.merriam-webster.com/dictionary/notch (last visited February 24, 2022) ......... 11

*Notched*, Dictionary.com,
https://www.dictionary.com/browse/notched (last visited February 24, 2022)....................11

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| | : | |
| ME GLOBAL, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 19-00179 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, United States (the Government), respectfully submits this memorandum in reply to plaintiff's, ME Global, Inc. (ME Global), opposition (Pl. Opp.) to our cross-motion for summary judgment.

In our cross-motion, we demonstrated that the imported grinding rods satisfy the criteria of "Other bars and rods," as defined by Harmonized Tariff Schedule of the United States (HTSUS) Chapter 72 Note 1(m), and the criteria of "other alloy steel," as set forth by HTSUS Chapter 72 Note 1(f).  As a result, ME Global's rods are classifiable in heading 7228 as "Other bars and rods of other alloy steel."  We then explained that because the imported rods are not "further worked," as that term is defined by HTSUS Chapter 72, and because "not further worked than forged" accurately describes ME Global's grinding rods in their final, finished form, the rods are specifically provided for in HTSUS subheading 7228.40.00 as "Other bars and rods of other alloy steel … not further worked than forged."

Further, we showed that ME Global's imported steel grinding rods cannot also be classifiable in HTSUS heading 7326, a basket provision providing for "Other articles of iron or

steel," because the General Rules of Interpretation (GRI) and the Explanatory Note to HTSUS heading 7326 permit an article's classification under that heading only if it is not elsewhere provided for in the tariff statute.  Because the imported merchandise is classifiable in HTSUS heading 7228, it is precluded from classification in HTSUS heading 7326.

In its opposition, ME Global argues that "the subject grinding rods are processed to such an extent that they can no longer be classified in liquidation under Heading 7228, HTSUS, since they have acquired the character of 'articles' or of 'products falling in another heading of the tariff.'"  Pl. Opp. at 1.  As a result, ME Global contends that its imported rods are similar to "Grinding balls and similar articles used in mills" of subheading 7326.11, HTSUS.  *Id*. at 8-9. These arguments fail, however, because as discussed further below, they are premised upon an inapplicable Explanatory Note or inapposite decisions of this Court.  ME Global also misconstrues HTSUS headings 7228 and 7326 as use provisions, and its analysis runs afoul of the GRI.  Consequently, our cross-motion for summary judgment should be granted and ME Global's motion denied.

<u>**ARGUMENT**</u>

I.      **HTSUS HEADING 7228 SPECIFICALLY COVERS THE IMPORTED MERCHANDISE**

     **A.  The Imported Rods Have Not Been Processed Out Of HTSUS Heading 7228**

ME Global posits that "while a number of processes may be performed to the steel bars and rods of Heading 7228, HTSUS, if the operations cause the goods to acquire the character of "articles," or of "products falling within other headings," they [sic] longer remain classifiable in Heading 7228, HTSUS.  That is the case here."  Pl. Opp. at 3.  But that is not the case here.

HTSUS heading 7228 broadly provides for bars and rods, like ME Global's rods, that meet the definitional criteria of "Other bars and rods" and "other alloy steel" of HTSUS Chapter

72 Notes 1(f) and (m).  An "other" bar or rod of other alloy steel classifiable under HTSUS heading 7228 may undergo any of the following processes: hot-rolling, hot-drawing or extrusion (7228.30, HTSUS); forging (7228.40.00, HTSUS); cold-forming or cold-finishing (7228.50, HTSUS).  There is no dispute that ME Global's imported rods are the product of two of these processes: hot-rolling and forging.  *See* Ex. B to Def's Cross-Motion, Pl.'s Responses to Def's 2nd Interrogatories (2nd Rog Responses) Nos. 3(a), (d).  There should likewise be no dispute that, as a result, the imported grinding rods are classifiable in HTSUS heading 7228.

But ME Global challenges this classification.  In doing so, ME Global's argument that its imported rods are removed from HTSUS heading 7228 hinges entirely on the application of the Explanatory Note to HTSUS heading 7215,[1] which provides, in pertinent part, as follows:

> The bars and rods of this heading may: …
>
> (2) have been subjected to working (such as drilling or sizing, or to further surface treatments than are allowed for products of heading 72.14, such as plating, coating, or cladding (see Part (IV) (C) of the General Explanatory Note to this Chapter), provided that they do not thereby assume the character of articles or of products falling within other headings[.]

This Explanatory Note is not properly considered here.  "Although not binding, where a tariff term is *ambiguous* the Explanatory Notes may provide persuasive and 'clearly relevant guidance' to the meaning of the term."  *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1363 (Fed. Cir. 2011) (citation omitted) (emphasis added).  The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has also cautioned that "when the language of the tariff provision is unambiguous and the Explanatory Notes contradictory, 'we do not afford [the Explanatory

---

[1] Although HTSUS heading 7215 is not at issue here, Explanatory Note (A) to HTSUS heading 7228 provides that "The provisions of the Explanatory Notes to headings 72.14 to 72.16 apply, *mutatis mutandis*, to the products of this heading."

Notes] any weight.'" *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1293 (Fed. Cir. 2008) (citation omitted).  Moreover, "{a}lthough the examples in the Explanatory Notes are probative and sometimes illuminating, we shall not employ their limiting characteristics, to the extent there are any, to narrow the language of the classification heading itself." *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1359 (Fed. Cir. 2003).

Here, the terms of HTSUS heading 7228 ("Other bars and rods of other alloy steel") are clearly defined.  Specifically, "Other bars and rods" and "other alloy steel" are terms defined by HTSUS Chapter 72 Notes 1(f) and (m).  Thus, if a bar or rod, such as ME Global's imported rods, satisfy the terms of these controlling notes, they are classifiable under HTSUS heading 7228, full-stop.  HTSUS section and chapter notes "are not optional interpretive rules," but have the force of statutory law.  *Aves. In Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted).  In contrast, the limiting characteristics of the Explanatory Note to HTSUS heading 7215 (*i.e.*, a bar or rod that is worked to the point that it "assumes[s] the character of articles or of products falling within other headings") may not be employed to narrow the unambiguously defined terms of HTSUS heading 7228.

Assuming *arguendo* that the Explanatory Note to HTSUS heading 7215 is even relevant to the classification dispute here, let alone controlling, it merely stands for the proposition that bars and rods of HTSUS heading 7228—which may undergo any of the manufacturing processes specified in the subheadings to heading 7228, HTSUS—may also be subjected to additional working (*i.e.*, drilling, sizing, further surface treatments, etc.), so long as that *working* does not result in the bars and rods assuming the character of articles or products of other tariff headings. In other words, forging and hot-rolling will not remove a bar or rod from HTSUS heading 7228, but additional working that transforms the bars and rods into an article of another heading may.

But that has not occurred here.  ME Global's grinding rods have not undergone any additional working that removes the rods from HTSUS heading 7228, as contemplated by the Explanatory Note to HTSUS heading 7215.  To manufacture ME Global's imported rods, steel blooms are first heated, hot-rolled, and cooled to form steel bars; these input steel bars are then cut to length for the intended customer, heated in an Inductoforge, and processed by a series of forging dies while passing through a water quenching system with a computerized temperature control.  *See* 2nd Rog Responses Nos. 3(a), (d); Pl's Resp. to Def's Rule 56.3 Statement of Fact No. 2.  These manufacturing processes are either specifically provided for in the subheadings to HTSUS heading 7228 (hot-rolling; forging) or constitute acceptable further working or finishing treatments in accordance with Part (IV)(C) of the General Explanatory Notes to Chapter 72[2] (sizing; heat treatment).  That ME Global cuts its rods to length for its customers and subjects the rods to further heat treatment in no way renders the rods too worked to be "{o}ther bars and rods of other alloy steel" of HTSUS heading 7228.

### B.  This Case Is Not Akin To *Motor Wheel* And *Amcor*

ME Global attempts to support its contention that the imported grinding rods have been

---

[2] Part (IV)(C) of the General Explanatory Notes to Chapter 72 provides, in relevant part, that "finished products may be subjected to further finishing treatments or converted into other articles by a series of operations such as (1) **Mechanical working**, i.e., turning, milling, grinding, perforation or punching, folding, sizing, peeling, etc." or "(2) **Surface treatments** or other operations, including cladding, to improve the properties or appearance of the metal, protect it against rusting and corrosion, etc."  (emphasis in original).  Part (IV)(C)(2) of the General Explanatory Notes to Chapter 72 also explains that:

> Except as otherwise provided in the text of certain headings, such treatments do not affect the heading in which the goods are classified.  They include [among other treatments and operations listed in subparts (b) – (g)]:
>
> (a) Annealing, hardening, tempering, case-hardening, nitriding and similar heat treatments to improve the properties of the metal.

processed out of HTSUS heading 7228 by discussing *Motor Wheel Corp. v. United States*, 19

C.I.T. 385 (1995) (*Motor Wheel*) and *Amcor Flexibles Singen GmbH v. Unites States*, 425 F.

Supp. 3d 1287 (Ct. Int'l Tr. 2020) (*Amcor*).  ME Global's application of these cases is

unavailing.

    *Motor Wheel* concerned whether imports of cut steel that post-importation are made into

wheel discs are classified under HTSUS subheading 7208.90.00 as other flat-rolled products of

iron or nonalloy steel, as U.S. Customs and Border Protection (CBP) determined, or under

HTSUS subheading 7326.19.10 as a stamped article not further worked, as the plaintiff

maintained.  19 C.I.T. at 385.  The *Motor Wheel* Court decided in the plaintiff's favor, ruling that

the cut steel products, which are first flat-rolled and then stamped, have been processed out of

HTSUS heading 7208 in accordance with the proviso of HTSUS Chapter 72 Note 1(k).  *Id*. at

388-90.  This controlling chapter note provided, in pertinent part, that "Flat-rolled products…are

to be classified as products of a width of 600 mm or more, provided that they do not assume the

character of articles or products of other headings."  The *Motor Wheel* Court found dispositive

that "flat-rolled products do not commonly and commercially include stampings made from such

flat-rolled products."  19 C.I.T. at 388.  As a result, the Court in *Motor Wheel* held that

subheading 7208.90.00, HTSUS, does not encompass stampings cut from flat-rolled steel.  *Id*. at

392.

    The differences between *Motor Wheel* and the present action are readily apparent.  In

*Motor Wheel*, the proviso of HTSUS Chapter 72 Note 1(k), as a controlling chapter note, was

binding on the Court's analysis.  In contrast here, HTSUS Chapter 72 Note 1(m), which defines

"Other bars and rods," contains no such proviso.  Moreover, the similar proviso of the

Explanatory Note to HTSUS heading 7215 that ME Global relies upon is, as an explanatory note,

neither binding on this Court's analysis, nor as explained above, properly applied to narrow the unambiguously defined terms of HTSUS heading 7228.

Further, as discussed above, HTSUS heading 7228, as clarified by Part (IV)(C) of the General Explanatory Notes to Chapter 72, includes *all* of the processes necessary to render ME Global's imported rods into finished articles: hot-rolling; cutting; forging; additional heat treatment.  Thus, ME Global's merchandise cannot be processed out of HTSUS heading 7228, as ME Global contends.  HTSUS heading 7208 at issue in *Motor Wheel*, by contrast, provides only for flat-rolled products that have been hot-rolled.  Crucially, the heading does not encompass flat-rolled products that have also been stamped.  As a result, heading 7208, HTSUS, did not describe the finished, flat-rolled *and* stamped *Motor Wheel* products in their entirety.

ME Global has also cited to *Amcor*, 425 F. Supp. 3d at 1292, which concerned the classification of Formpack, a composite good made of plastics and aluminum, as either plastic under HTSUS heading 3921 or as aluminum under HTSUS heading 7607.  In deciding that the product had the essential character of aluminum, the *Amcor* Court was guided, in part, by HTSUS Chapter 76 Note 1(d), which like HTSUS Chapter 72 Note 1(k) and Explanatory Note to HTSUS heading 7215, contains a proviso that goods of HTSUS headings 7606 and 7607 may be processed out of the headings if they "assume the character of articles or products of other headings."  *Id*. at 1298-1306.

*Amcor* is inapposite to the present dispute.  *Amcor* involved a composite good of discrete materials, competing tariff headings, and a chapter note requiring an analysis of the product's character.  In contrast, this action involves a singular product (steel rods of martensite on the surface and pearlite in the center), a tariff *subheading* (HTSUS 7326.11) that ME Global contends supersedes an otherwise applicable tariff heading (HTSUS heading 7228), and an

Explanatory Note that is neither properly invoked nor dispositive of the classification dispute before the Court.

### C.  HTSUS Headings 7228 And 7326 Are Not Use Provisions

ME Global argues that a good has been processed out of HTSUS heading 7228, not just when it has "assume[d] the character of articles or products of other headings," but also when it has become an article with a "different name, character or *use*."  Pl. Opp. at 5, fn. 1 (cont.) (emphasis added).  Framing the inquiry with use front and center, ME Global summarily concludes that "the processing of ME Global's grinding rods renders them unsuitable for most of the uses to which steel rods are ordinarily put, and renders them useful only for a single application, *i.e.,* in grinding mills."  *Id.*; *see also id.* at 6 ("Rather, Plaintiff's grinding rods have been specially processed to the point where all other utility has been lost[.]").

ME Global's request that use be elevated as a factor in resolving the present classification dispute should be rejected.  Neither HTSUS heading 7228 ("Other bars and rods of other alloy steel") nor HTSUS heading 7326 ("Other articles of iron or steel") describe steel goods classifiable under either heading by their use.  Whether a given bar or rod is an "other" bar or rod of alloy steel of HTSUS heading 7228 depends on whether the controlling HTSUS Chapter 72 criteria, namely HTSUS Chapter 72 Notes 1(f) and (m), has been satisfied.  And HTSUS heading 7326 is a basket provision.  Use is not a consideration for goods classified in either heading.

### D.  ME Global's Analysis Is Unsupported By The GRI And Controlling Precedent

ME Global, however, attempts to bootstrap HTSUS subheading 7326.11 and its invocation of use ("Grinding balls and similar articles used in mills") into the Court's evaluation of HTSUS headings 7228 and 7326.  Indeed, ME Global argues that whether its rods have assumed "the character of articles or of products falling within other headings," is an inquiry that

may involve a comparison of articles at the subheading level, and not just at the heading level, as the proviso to the Explanatory Note to HTSUS heading 7215 states.  Pl. Opp. at 7.  In this way, ME Global maintains that the Court may consider whether a bar or rod of other alloy steel otherwise classifiable in HTSUS heading 7228 has assumed the character of "Grinding balls and similar articles used in mills" of HTSUS subheading 7326.11, and not just of "Other articles of iron or steel" of HTSUS heading 7326.  *Id.* at 7-8.  To buttress this argument, ME Global cites HTSUS General Note 3(h)(vi),[3] which provides as follows:

> (h) <u>Definitions</u>. For the purposes of the tariff schedule, unless the context otherwise requires—
>
> ***
>
> (vi) the term "<u>headings</u>" refers to the article descriptions and tariff provisions appearing in the schedule at the first hierarchical level; the term "<u>subheading</u>" refers to any article description or tariff provision indented thereunder; a reference to "<u>headings</u>" encompasses subheadings indented thereunder.

(emphasis in original); *see* Pl. Opp. at 7; *see also Motor Wheel*, 19 C.I.T. at 389 (quoting a portion of this definition of "headings" from then-General Note 7(f), HTSUS, to construe the proviso of HTSUS Chapter 72 Note 1(k)).  ME Global's attempt to expand the scope of HTSUS heading 7326 for classification purposes to include the terms of its subheadings misconstrues HTSUS General Note 3(h)(vi) and the GRI, and runs afoul of controlling precedent.

HTSUS General Note 3(h)(vi) specifies that a *reference* to "headings," generally, encompasses a heading's indented subheadings; the General Note does not speak to how the *terms of the headings* are to be evaluated for classification purposes.  In contrast, the Federal Circuit has made clear that "{t}he classification of merchandise is governed by the GRIs and the ARIs, which are applied in numerical order.  The classification analysis always begins with GRI

---

[3] ME Global mistakenly describes General Note 3(h)(vi) as an Additional U.S. Rule, and not as a General Note.  Pl. Opp. at 7.

1, which directs that 'classification shall be determined according to the terms of the headings and any relative section or chapter notes.'" *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014) (*R.T. Foods*) (citing *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (*BenQ*) and quoting GRI 1).  In accordance with GRI 1, *the terms of the headings* and any controlling section or chapter notes are first and foremost determinative of an article's classification, *not the terms of the subheadings*.  Indeed, the Federal Circuit has expressly cautioned that "{p}ursuant to GRI 1, the possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings." *R.T. Foods*, 757 F.3d at 1353 (quoting *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998) ("[W]hen determining which heading is ... more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings.")); *see also Well Luck Co., Inc. v. United States*, 887 F.3d 1106, 1111 (Fed. Cir. 2018).  Thus, HTSUS General Note 3(h)(vi) neither speaks to nor undermines GRI 1's imperative to compare, for classification purposes, only the terms of the possible headings and not the terms of any subheadings.

And on that score, in accordance with GRI 1,[4] the terms of HTSUS heading 7228, as defined by HTSUS Chapter 72 Notes 1(f) and (m), specifically describe the imported grinding rods in their entirety as other rods of other alloy steel.  We note that the parties dispute whether the ends of ME Global's rods have been notched, *see* Def's Resp. to Pl.'s Rule 56.3 Statement of

---

[4] Although both parties agree that a GRI 3(a) relative specificity analysis is not appropriate here, ME Global confusingly represents that we have "urge[d]" such an analysis.  Pl. Opp. at 7.  This is not true.  *See* Def's Cross-Motion at 20 ("Consequently, because a given article cannot be both 'specifically covered elsewhere in the Nomenclature' and *prima facie* classifiable in HTSUS heading 7326, a GRI 3(a) relative specificity analysis is not warranted here, despite ME Global's claims to the contrary.")

Fact No. 12, and as a result, appear to dispute whether ME Global's imported grinding rods "have a uniform solid cross section along their whole length," as required by HTSUS Chapter 72 Note 1(m)'s definition of "Other bars and rods."  *See* Pl. Resp. to Def's Rule 56.3 Statement of Fact No. 4 ("The steel grinding rods have a uniform cross section along most of their length, except at the ends, where they are notched to fit into a particular rod mill.").  But this dispute is not material because even if the ends of the imported grinding rods are notched, as ME Global represents in its briefing, classification of the rods under HTSUS heading 7228 is still correct.

Undefined by the tariff statute, the term "notched" is commonly defined as an angular or V-shaped indentation.[5]  *See* https://www.merriam-webster.com/dictionary/notch (last visited February 24, 2022); https://www.dictionary.com/browse/notched (last visited February 24, 2022).  Thus, a notched end of a rod does not alter the uniform substance or diameter of a rod's cross section along its entire length.  Furthermore, HTSUS Chapter 72 Note 1(m) specifies that "other bars and rods" may "have indentations, ribs, grooves or other deformations produced during the rolling process (reinforcing bars and rods)."  A notch, as a type of indentation, is therefore provided for by the chapter note.  *See* HQ 966169 (Apr. 8, 2003) (ruling that steel bars with chamfered ends are classified under HTSUS Chapter 72 and have not assumed the character of other articles of iron and steel under heading 7326, HTSUS, because "chamfering," a type of beveling,[6] is the "functional equivalent of mechanical working or surface treatment to ensure that

---

[5] Where, as here, terms are undefined in the tariff statute, they "are {to be} construed according to their common {and} commercial meanings."  *BenQ*, 646 F.3d at 1376.  To ascertain the "common {and} commercial meanings" of a particular term the court "may rely on its own understanding of the term as well as upon lexicographic and scientific authorities."  *Len-Ron Mfg. Co., Inc.  v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003).  That is, the "court may consult dictionaries, scientific authorities, and other reliable information sources."  *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).
[6] "Beveling" means "{t}o cut at an inclination that forms an angle other than a right angle[.]" https://www.thefreedictionary.com/beveling (last visited March 1, 2022).

the shaft is of a uniform cross section"); *see also* HQ H217701 (August 14, 2013) and HQ

H217699 (May 9, 2014) (classifying high speed steel rods that are pointed on one end and

beveled on the other under HTSUS heading 7228).  Consequently, regardless of whether ME

Global's imported grinding rods have notched ends or not, the rods satisfy the requirements of

HTSUS Chapter 72 Note 1(m), and are thus classifiable under HTSUS heading 7228.

Because ME Global's imported grinding rods are specifically covered by HTSUS

heading 7228, they cannot also be classified in HTSUS heading 7326, a basket provision

covering "Other articles of iron or steel."  "A basket provision is not a specific provision.

Therefore, [c]lassification of imported merchandise in a basket provision is only appropriate if

there is no tariff category that covers the merchandise more specifically."  *R.T. Foods*, 757 F.3d

at 1354 (citations and internal quotation marks omitted).  *See also* Explanatory Note to Heading

7326, which states as follows:

> This heading covers all iron or steel articles obtained by forging or
> punching, by cutting or stamping or by other processes such as
> folding, assembling, welding, turning, milling or perforating **other
> than** articles included in the preceding headings of this Chapter or
> covered by Note 1 to Section XV or included in **Chapter 82** or **83**
> or more specifically covered elsewhere in the Nomenclature.

(emphasis in original).  Pursuant to this Explanatory Note, ME Global's steel rods could only be

classified in heading 7326, HTSUS, if the rods were not more specifically covered elsewhere in

the tariff statute.  Since the imported rods are specifically covered by HTSUS heading 7228, they

are precluded from classification in heading 7326, HTSUS.

As such, ME Global's conclusion that its imported rods are "similar articles" to those of

HTSUS subheading 7326.11, *see* Pl. Opp. at 9, is not the product of a proper or relevant

classification analysis.  To reach HTSUS subheading 7326.11, ME Global's steel rods must *first*

be excluded from classification under HTSUS heading 7228, and *second*, they must fall under

12

HTSUS heading 7326 instead.  Only then could the imported merchandise be potentially classified in HTSUS subheading 7326.11.  But a GRI 1 analysis of ME Global's grinding rods never progresses past HTSUS heading 7228, as that tariff heading specifically covers the imported merchandise in its entirety (in particular, under HTSUS subheading 7228.40.00 as "Other bars and rods of other alloy steel … not further worked than forged.").  Accordingly, neither HTSUS heading 7326 nor HTSUS subheading 7326.11 is a viable tariff designation for ME Global's imported goods.

## CONCLUSION

For these reasons, we respectfully request that the Court grant our cross-motion for summary judgment and deny ME Global's motion for summary judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:

Valerie Sorensen-Clark
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-0482
Attorneys for Defendant

Dated: March 21, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| ME GLOBAL, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No. 19-00179 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT STANDARD CHAMBER PROCEDURE 2(B)

I, Alexander Vanderweide, a Senior Trial Counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing reply brief, relying upon the word count feature of the word processing program used to prepare this brief, certify that this reply brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 4111 words.

/s/ Alexander Vanderweide