Slip Op. 23–68

UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————
:
ME GLOBAL, INC.,                                  :
:
Plaintiff,                :
:
:        Before: Richard K. Eaton, Judge
v.                       :
:        Court No. 19-00179
UNITED STATES,                                    :
:
Defendant.              :
:
—————————————————————

**OPINION**

[On classification of heat-treated forged steel rods, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.]

Dated: May 2, 2023

*John M. Peterson*, Neville Peterson, LLP, of New York, NY, argued for Plaintiff ME Global, Inc. With him on the brief were *Richard F. O'Neill* and *Patrick B. Klein*.

*Alexander J. Vanderweide*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for Defendant United States. With him on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Justin R. Miller*, Attorney-In-Charge, International Trade Field Office. Of counsel on the brief was *Valerie Sorensen-Clark*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Eaton, Judge: Before the court are the cross-motions for summary judgment of plaintiff ME Global, Inc.[1] ("Plaintiff") and defendant the United States, on behalf of the U.S. Customs and Border Protection ("Customs"). *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Br."), ECF No. 20-2; Pl.'s Reply Supp. Mot. Summ. J. Opp'n Def.'s Cross-Mot. Summ. J. ("Pl.'s Reply"), ECF No. 27;

_____

[1]     ME Global, Inc. is a U.S. subsidiary of Compania Electro Metalurgica S.A., a publicly traded company based in Chile. *See* Pl.'s Corp. Disclosure Statement, ECF No. 3.

*see also* Def.'s Mem. Supp. Cross-Mot. Summ. J. and Resp. Opp'n Pl.'s Mot. Summ. J. ("Def.'s Br."), ECF No. 23; Def.'s Reply Pl.'s Opp'n Def.'s Cross-Mot. Summ. J. (Def.'s Reply"), ECF No. 30. At issue is the proper classification of heat-treated forged steel rods from the People's Republic of China ("China"), entered by Plaintiff on August 4, 2018. *See* Entry Summary, ECF No. 7-1.

For the reasons set forth below, Customs' cross-motion for summary judgment is granted, Plaintiff's motion for summary judgment is denied, and the court finds that Plaintiff's heat-treated forged steel rods are properly classified under the Harmonized Tariff Schedule of the United States ("HTSUS") (2018)[2] subheading 7228.40.00 as "[o]ther bars and rods, not further worked than forged."

## BACKGROUND

The facts described below have been taken from the admitted portions of the parties' USCIT Rule 56.3 statements and supporting exhibits, and findings based on record evidence on which no reasonable fact-finder could come to an opposite conclusion. *See* Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s SOF"), ECF No. 20-3; Pl.'s Resp. to Def.'s Statement of Material Facts Not in Dispute ("Pl.'s Resp. SOF"), ECF No. 27-1; Def.'s Statement of Material Facts Not in Dispute ("Def.'s SOF"), ECF No. 23; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Dispute ("Def.'s Resp. SOF"), ECF No. 23.

At issue are heat-treated forged steel rods, which are used to crush ore in mining and mineral extraction operations. Pl.'s SOF ¶ 6. When in use, the subject rods lie in parallel alignment in a large rotating cylinder or "mill." *Id.* ¶ 21. Ore is fed into the mill and, as it rotates, the ore is

---

[2]        All citations to the HTSUS herein are to the 2018 version.

crushed between the rods. *Id.* This pulverizes the ore into a finer composition, allowing for the recovery of metals such as gold, copper, silver, and iron. *Id.* ¶¶ 20-21.

The rods are produced in China by Plaintiff's joint venture called ME Global Long Teng Grinding Media (Changshu) Co. Ltd. ("ME Long Teng"). *Id.* ¶ 6. To manufacture the imported rods, steel blooms[3] are first heated, hot-rolled into bars, and then cooled. Def.'s SOF ¶ 2. The steel bars are then sent to ME Long Teng's plant where they are cut to the customer's desired length, heated in a series of Inductoforge[4] devices, and then processed by a series of forging dies and passed through a water quenching system. *Id.*

The result of this process is a steel rod comprised of a hard outer surface of martensite and a softer inner core of pearlite. Pl.'s SOF ¶ 16. The hardness of the outer martensite layer makes the rods suitable for breaking down ore and mineral structures, while the softness of the inner pearlite core provides ductility, which prevents the bars from breaking while being used in the mill. *Id.* ¶ 17.

The subject rods, as imported, have a chromium content between 0.3% and 0.39% by weight. *See* Def.'s SOF ¶ 3; *see also* Pl.'s Resp. SOF ¶ 3.

Plaintiff ME Global, Inc., the importer of record of the rods, entered them as a single entry at the Port of Minneapolis, Minnesota on August 4, 2018, Entry No. 791-1880870-3. *See* Entry

---

[3]     The American Iron and Steel Institute defines a steel "bloom" as "[a] semi-finished steel form, with a rectangular cross-section that is more than 8 [inches]." *Glossary*, AM. IRON AND STEEL INST., https://www.steel.org/steel-technology/steel-production/glossary/ (last visited Apr. 10, 2023).

[4]     An "Inductoforge" device refers to "a continuous casting boost heater used with steel, stainless steel, aluminum and other metals." Def.'s Br. Ex. B, ECF No. 23-2 (Pl.'s Resp. Def.'s 2d Interrogs.).

Summary. Customs classified the rods under HTSUS subheading 7228.30.80 ("Other bars and rods, not further worked than hot-rolled, hot-drawn or extruded . . . Other"). Def.'s SOF ¶ 1.

When Plaintiff entered the rods, goods classified under HTSUS subheading 7228.30.80 were subject to a national security tariff of 25% *ad valorem* imposed under HTSUS subheading 9903.80.01 (establishing 25% *ad valorem* duties for, *inter alia*, Chinese products of iron or steel classified under HTSUS heading 7228), pursuant to Section 232 of the Trade Expansion Act of 1962.[5] *See* 19 U.S.C. § 1862 (2018); *see also* Subheading 9903.80.01, HTSUS (referencing HTSUS subheading 7228.30.80).

---

[5]     Section 232 of the Trade Expansion Act of 1962, codified as amended at 19 U.S.C. § 1862, empowers the President to adjust the imports of articles that may threaten to impair national security. *See* 19 U.S.C. § 1862(c). On March 8, 2018, the President, pursuant to Section 232, issued Proclamation 9705 which imposed a 25% *ad valorem* tariff on steel articles imported from all countries except Canada and Mexico. *See* Proclamation 9705, 83 Fed. Reg. 11,625, 11,626, 11,629 (Mar. 8, 2018); *see also Universal Steel Prod., Inc. v. United States*, 45 CIT __, __, 495 F. Supp. 3d 1336, 1338 (2021), *judgment entered sub nom. Universal Steel Prod. v. United States*, 497 F. Supp. 3d 1406 (2021), *and aff'd sub nom. USP Holdings, Inc. v. United States*, 36 F.4th 1359 (Fed. Cir. 2022), *cert. denied*, No. 22-565, 2023 WL 2634535 (U.S. Mar. 27, 2023) (concluding that "Proclamation 9705 and its subsequent modifications do not violate [19 U.S.C. § 1862]."). The President implemented the tariffs by modifying Subchapter III of Chapter 99 of the HTSUS to add a new note 16 and a new tariff provision under the subheading 9903.80.01. *Id.* at 11,629-30. Note 16 provided, in relevant part, that "[t]he rates of duty set forth in [sub]heading 9903.80.01 . . . apply to all imported products of iron or steel classifiable in the provisions enumerated in this subdivision: . . . bars and rods provided for in heading[] . . . 7228." Ch. 99, Subchapter III, Note 16(b)(ii), HTSUS.

        Accordingly, merchandise imported into the United States from China classified under HTSUS subheading 7228.30.80 (i.e., the subheading Customs classified Plaintiff's rods under) became subject to the additional 25% *ad valorem* Section 232 tariffs on March 23, 2018, and remain subject thereto. Plaintiff's rods were dutiable at 25% *ad valorem* because they were (1) imported from China; (2) entered on August 4, 2018, after the Section 232 tariffs went into effect; and (3) classified under an HTSUS subheading (i.e., 7228.30.80) to which Section 232 tariffs applied (i.e., through application of HTSUS subheading 9903.80.01). Had the steel rods been classified under Plaintiff's preferred subheading, HTSUS 7326.11.00 ("Grinding balls and similar articles for mills"), they would not be subject to the 25% tariffs.

On March 22, 2019, Plaintiff filed a timely protest of Customs' classification of its steel rods. *See* Mem. Supp. Protest (Mar. 22, 2019), ECF No. 7-1; *see also* Compl. ¶ 31, ECF No. 9. On May 13, 2019, Customs denied Plaintiff's protest. Compl. ¶ 32. On May 21, 2020, Plaintiff then filed its timely complaint with the court contesting Customs' denial of its protest.

## JURISDICTION AND STANDARD OF REVIEW

The court has subject matter jurisdiction under 28 U.S.C. § 1581(a) and reviews Customs' classification determination *de novo*. *See* 28 U.S.C. § 1581(a) (2018); *see also id.* § 2640(a)(1); *Telebrands Corp. v. United States*, 36 CIT 1231, 1234, 865 F. Supp. 2d 1277, 1279-80 (2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2015).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000) (citing *McKay v. United States*, 199 F.3d 1376, 1380 (Fed. Cir. 1999)). In the context of a Customs classification case, summary judgment is appropriate when there is no factual dispute as to the nature of the merchandise in question. *See Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006).

## LEGAL FRAMEWORK

The objective in a classification case is to determine the correct tariff provision for the subject merchandise. *See Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

While the court affords deference to Customs' classification rulings relative to their "power to persuade," it has "an independent responsibility to decide the legal issue of the proper meaning and scope of the HTSUS terms." *See United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005). As such, it is "the court's duty to find the *correct* result, by whatever procedure is best suited to the case at hand." *Jarvis Clark*, 733 F.2d at 878 (emphasis in original).

The court's review of a classification determination involves two steps. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citation omitted). First, it must construe the relevant classification headings—a question of law. *See id.* Second, it must determine which of the properly construed tariff provisions the merchandise at issue falls under—a question of fact. *See id.* When the nature of the merchandise is undisputed, as is the case here, the issue collapses entirely into a question of law ripe for summary judgment. *See Cummins Inc.*, 454 F.3d at 1363.

The General Rules of Interpretation ("GRI")[6] "govern classifications of imported goods under [the] HTSUS and [are] appl[ied] in numerical order." *CamelBak Prods., LLC v. United*

---

[6]     Relevant here are GRI 1 and GRI 6. GRI 1 provides:

       The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the [subsequent GRIs].

GRI 1, HTSUS.

       GRI 6 provides:

*States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) (citing *BASF Corp. v. United States*, 482 F.3d 1324,

1325-26 (Fed. Cir. 2007)). Most classification disputes are resolved by the application of GRI 1.

*See Telebrands Corp.*, 36 CIT at 1235, 865 F. Supp. 2d at 1280. If a good is not classifiable under

GRI 1, and if the headings and notes do not require otherwise, then the other GRIs will be

considered in numerical order. *See Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158,

1163 (Fed. Cir. 2017) (citation omitted) ("The GRI apply in numerical order, meaning that

subsequent rules are inapplicable if a preceding rule provides proper classification."). Under GRI

1, the court determines the appropriate classification of merchandise "according to the terms of the

headings[7] and any relative section or chapter notes." GRI 1, HTSUS.[8] The HTSUS section and

chapter notes "are not optional interpretive rules," but instead have the force of statutory law. *Aves.*

*in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (quoting *Park B. Smith,*

*Ltd. v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003)).

      "Only after determining that a product is classifiable under [a specific] heading should the

court look to the subheadings . . . ." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440

(Fed. Cir. 1998). Moreover, "the possible [tariff] headings are to be evaluated without reference

---

      For legal purposes, the classification of goods in the subheadings of a
heading shall be determined according to the terms of those subheadings and any
related subheading notes and, mutatis mutandis, to the above rules, on the
understanding that only subheadings at the same level are comparable. For the
purposes of this rule, the relative section, chapter and subchapter notes also apply,
unless the context otherwise requires.

GRI 6, HTSUS.

    [7]     "The first four digits of an HTSUS provision constitute the heading, whereas the
remaining digits reflect subheadings." *Schlumberger Tech. Corp.*, 845 F.3d at 1163 n.4.

    [8]     "[T]he terms of the headings and any relative Section or Chapter Notes are
paramount, i.e., they are the first consideration in determining classification." GRI 1, Explanatory
Note V(a), HTSUS.

to their subheadings, which cannot be used to expand the scope of their respective headings." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014) (citing *Orlando Food Corp.*, 140 F.3d at 1440).

"[T]he court also may consider the Explanatory Notes to the Harmonized Commodity Description and Coding System [(the "Explanatory Notes")], developed by the World Customs Organization." *See Rubies Costume Co. v. United States*, 41 CIT __, __, 279 F. Supp. 3d 1145, 1154 (2017) (citation omitted). The Explanatory Notes (unlike the section and chapter notes) are not legally binding or dispositive, but "may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *Aves. in Leather, Inc.*, 423 F.3d at 1334 (citation omitted). A court may rely on its own understanding of any terms undefined in the HTSUS or consult other reliable information sources to ascertain the common meaning of such terms. *See Baxter Healthcare Corp. v. United States*, 182 F.3d 1333, 1337-38 (Fed. Cir. 1999).

## DISCUSSION

While Customs classified, at entry, the subject rods under HTSUS subheading 7228.30.80 ("Other bars and rods, not further worked than hot-rolled, hot-drawn or extruded . . . Other"), it now argues that the rods should be classified under HTSUS chapter 72, heading 7228, subheading 7228.40.00, as "[o]ther bars and rods, not further worked than forged."[9] *See* Def.'s Br. at 12-16.

---

[9]      HTSUS chapter 72 covers "iron and steel." The relevant portions of HTSUS chapter 72 read as follows:

**7228**          Other bars and rods of other alloy steel; angles, shapes, and sections, of other alloy steel; hollow drill bars and rods, of alloy or non-alloy steel:

. . . .

**7228.40.00**          Other bars and rods, not further worked than forged

Customs maintains that under GRI 1 the imported rods are prima facie classifiable under HTSUS subheading 7228.40.00 because they are "[o]ther bars and rods" of "[o]ther alloy steel" and are not further worked than forged as defined in the chapter notes to chapter 72. *See* Ch. 72, Notes 1(f) ("Other alloy steel") & (m) ("Other bars and rods"), HTSUS. For Customs, the rods are classifiable *eo nomine*[10] under HTSUS subheading 7228.40.00 because this subheading describes the rods by name—and with greater specificity than HTSUS subheading 7228.30.80.[11] *See* Def.'s Br. at 19-21.

Plaintiff, on the other hand, argues that the subject rods do not fall within the scope of HTSUS heading 7228 because they have assumed the character of goods classified under HTSUS chapter 73, heading 7326, subheading 7326.11.00, covering "[o]ther articles of iron or steel: [f]orged or stamped, but not further worked: . . . [g]rinding balls and similar articles for mills."[12] *See* Pl.'s Br. at 14-21.

---

[10]     An *eo nomine* tariff provision is one that "describes an article by a specific name." *R.T. Foods, Inc.*, 757 F.3d at 1354 (quoting *CamelBak Prods.*, 649 F.3d at 1364). "[This] includes all forms of the named article, including improved forms." *Id.* (quoting *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 646 (Fed. Cir. 2013)). For example, in *Carl Zeiss, Inc. v. United States*, the Federal Circuit determined that HTSUS heading 9011—which covers "compound optical microscopes"—is an *eo nomine* classification provision because it is a provision that describes an article or good by a specific name, not by its use. *See* 195 F.3d 1375, 1379 (Fed. Cir. 1999).

[11]     As shall be seen, HTSUS subheading 7228.40.00 ("Other bars and rods, not further worked than forged") is more specific than HTSUS subheading 7228.30.80 ("Other bars and rods, not further worked than hot-rolled, hot-drawn or extruded . . . Other") because it describes the subject rods in their final form.

[12]     HTSUS chapter 73 covers "articles of iron or steel." The relevant portions of HTSUS chapter 73 read as follows:

    **7326**         Other articles of iron or steel:

                     Forged or stamped, but not further worked:

In making this claim, Plaintiff relies on Explanatory Note 72.28(A) (i.e., the Explanatory Note to Customs' preferred heading) which states that "[t]he provisions of the Explanatory Notes to headings [7214] to [7216] apply, *mutatis mutandis*, to the products of this heading [i.e., HTSUS heading 7228]." *See* Explanatory Note 72.28(A). Explanatory Note 72.28(A) thus incorporates, by reference, Explanatory Note 72.15(2).[13]

Explanatory Note 72.15(2) provides:

> The bars and rods of this heading may: . . . have been subjected to working (such as drilling or sizing, or to further surface treatments than are allowed for products of heading [7214], such as plating, coating, or cladding (see Part (IV) (C) of the General Explanatory Note to this Chapter), provided that they do not thereby *assume the character of articles or of products falling within other headings*.

Explanatory Note 72.15(2) (emphasis added).[14]

For Plaintiff, these two Explanatory Notes (Explanatory Note 72.28(A) and Explanatory Note 72.15(2)), taken together, stand for the proposition that merchandise otherwise classified under HTSUS heading 7228 will not be classified thereunder if subjected to "working" that causes it to "*assume the character of articles or products falling in* [sic] *another* [sic] *heading* [sic]." Pl.'s Br. at 14-15 (quoting Explanatory Note 72.15(2)).

Relying on the language in Explanatory Note 72.15(2)—made applicable to HTSUS heading 7228 by reference—Plaintiff asserts that the heat treatments and other processing that

---

       **7326.11.00**         Grinding balls and similar articles for mills

[13]    Although Explanatory Note 72.28(A) incorporates by reference Explanatory Notes 72.14, 72.15, and 72.16, only Explanatory Note 72.15 is relevant here.

[14]    There is some question as to whether Explanatory Note 72.15 applies to this classification dispute because Explanatory Note 72.15 covers "non-alloy" steel whereas the subject rods are of "alloy" steel. *See* Explanatory Note 72.15, HTSUS. Plaintiff fails to make its case, however, regardless of whether HTSUS heading 7215 applies or not.

occurred at ME Long Teng's manufacturing plant, although not considered further "working,"[15] nevertheless caused the rods to be "processed out" of the scope of HTSUS heading 7228 ("Other bars and rods of other alloy steel") because they assumed the character of articles under HTSUS subheading 7326.11.00 ("Grinding balls and similar articles for mills"). Pl.'s Br. at 15-16, 18.

According to Plaintiff, "[t]he processing by ME Long Teng causes [the rods] to be processed into a new and different article more properly classified in subheading 7326.11, HTSUS [because t]he resulting article is 'similar to' 'grinding balls' and which are also designed—exclusively—for use in mills." Pl.'s Br. at 16.[16] Importantly, Plaintiff claims that the rods' actual use as grinding rods dictates their classification under HTSUS subheading 7326.11.00. *See* Pl.'s Br. at 18 ("[T]he use of the grinding rods is determinative of their classification.").

There are two problems with Plaintiff's argument. First, the subject rods' use is not an essential or even a material consideration in their classification because neither HTSUS heading 7228 nor 7326 is a use provision—either principal or actual—nor does either heading inherently suggest that products classified within its scope are for a particular use. *See, e.g.*, *Apple Inc. v. United States*, 964 F.3d 1087, 1093 (Fed. Cir. 2020) ("A use provision describes an article by its

---

[15]   The two competing tariff provisions share a common requirement that, after the subject merchandise is "forged," it cannot be further "worked." HTSUS chapter 72 defines further working as "products subjected to any of the following surface treatments: polishing and burnishing; artificial oxidation; chemical surface treatments such as phosphatizing, oxalating and borating; coating with metal; coating with nonmetallic substances (e.g., enameling, varnishing, lacquering, painting, coating with plastics materials); or cladding." Ch. 72, Additional U.S. Note 2, HTSUS. Plaintiff agrees that the heat treatments and other processing that occurs at ME Long Teng's manufacturing plant does not constitute further working. *See* Pl.'s Br. at 12-14.

[16]   Plaintiff also argues, in the alternative, that if the court concludes that the subject steel rods are prima facie classifiable under both HTSUS subheadings 7228.40.00 ("Other bars and rods, not further worked than forged") and 7326.11.00 ("Grinding balls and similar articles for mills"), then an analysis under GRI 3 dictates their classification under HTSUS subheading 7326.11.00. As shall be seen, the court does not have to reach this issue because the subject steel rods are not prima facie classifiable under Plaintiff's proposed HTSUS subheading 7326.11.00.

principal or actual use." (citing *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1313 (Fed. Cir. 2012))). Second, Plaintiff's argument violates the principal that, under GRI 1, "the possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings." *R.T. Foods, Inc.*, 757 F.3d at 1353 (citing *Orlando Food Corp.*, 140 F.3d at 1440 ("[W]hen determining which heading is . . . more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings.")). And so, even though HTSUS subheading 7326.11.00 describes "[g]rinding balls and similar articles for mills," this subheading is not relevant when evaluating tariff provisions at the heading level.

## I.  The Court Will Not Consider the Use of the Subject Rods or the Terms of Subheadings in Evaluating the Parties' Competing Tariff Provisions Under GRI 1

### A.  The Subject Rods' Actual Use as Grinding Rods is Not a Material Consideration in Their Classification

Plaintiff contends that the subject rods' actual use as grinding rods is an essential consideration in determining their classification. *See* Pl.'s Br. at 18. But Plaintiff's argument that use should be elevated as a factor in resolving the present classification dispute is without merit.

Here, it is important to keep in mind that the discussion concerns headings—not subheadings. Neither HTSUS heading 7228[17] nor 7326[18] are use provisions because they do not describe an article by its principal or actual use. *See Schlumberger Tech. Corp.*, 845 F.3d at 1164 ("[A] use provision describes articles according to their principal or actual use." (citation omitted)).

---

[17]     HTSUS heading 7228 covers "[o]ther bars and rods of other alloy steel; angles, shapes and sections, of other alloy steel; hollow drill bars and rods, of alloy or non-alloy steel."

[18]     HTSUS heading 7326 covers "[o]ther articles of iron or steel."

A principal use provision classifies a particular article according to its ordinary commercial use, even though that article may, at times, be put to some atypical use. *See Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1364 (Fed. Cir. 1999). While the HTSUS contains plenty of principal use provisions, HTSUS headings 7228 and 7326 are not among them. *Cf. Dependable Packaging Sols., Inc. v. United States*, 757 F.3d 1374, 1378 (Fed. Cir. 2014) (emphasis added) (concluding that an HTSUS provision covering "[g]lassware *of a kind used for* table, kitchen, toilet, office, indoor decoration or similar purposes" is a principal use provision).

On the other hand, "[a]ctual use provisions, which are rare in the HTSUS, are those in which classification is dependent upon the merchandise's actual use." *GRK Canada, Ltd. v. United States*, 40 CIT __, __180 F. Supp. 3d 1260, 1266 n.7 (2016). Neither HTSUS heading 7228 nor 7326, however, is one of the few actual use provisions found in the HTSUS. *Cf. Tradewind Farms, Inc. v. United States*, 31 CIT 664, 665, 667 (2007) (not reported in the Federal Supplement) (citation omitted) (concluding that an HTSUS provision covering "implements to be used for agricultural or horticultural purposes" "is an actual use provision, as it contains the phrase 'to be used for.'"). Rather, they are *eo nomine* tariff provisions.

An *eo nomine* tariff provision "is one which describes a commodity by a specific name, rather than by use, and absent limitation or contrary legislative intent . . . includes all forms of the named article, even improved forms." *Well Luck Co. v. United States*, 887 F.3d 1106, 1111 n.4 (Fed. Cir. 2018) (cleaned up). HTSUS heading 7228 ("Other bars and rods of other alloy steel") is an *eo nomine* provision because it describes articles by specific names (i.e., "bars" and "rods" of "alloy steel"). *See, e.g.*, *Orlando Food Corp.*, 140 F.3d at 1441 ("HTSUS 2002, 'Tomatoes prepared or preserved,' is clearly *an eo nomine* provision, *i.e.*, 'it describes a commodity by a

specific name, usually one common in commerce.'" (quoting *Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995))).

Likewise, HTSUS heading 7326 ("Other articles of iron or steel") is an *eo nomine* provision of the basket type[19] because it describes, by name, iron or steel articles that are not more specifically provided for elsewhere in the HTSUS. *See, e.g.*, *Travenol Labs., Inc. v. United States*, 83 Cust. Ct. 1, 2, 4, 476 F. Supp. 1075, 1076, 1077 (1979) (describing a tariff provision covering "[h]ose, pipe, and tubing, all the foregoing not specially provided for [elsewhere]" as an "[e]o nomine provision of the 'basket' type"); *see also, e.g.*, *Janssen Ortho LLC v. United States*, 44 CIT __, __, 425 F. Supp. 3d 1352, 1359 (2020) ("An *eo nomine* provision 'describes an article by a specific name.'" (quoting *Schlumberger Tech. Corp.*, 845 F.3d at 1164)); *ADC Telecommunications, Inc. v. United States*, 916 F.3d 1013, 1018 (Fed. Cir. 2019) (concluding that an HTSUS provision covering "[l]iquid crystal devices not constituting articles provided for more specifically in other headings . . . or included elsewhere in this chapter 'is unquestionably *eo nomine* because it describes the articles it covers by name'" (quoting *Schlumberger Tech. Corp.*, 845 F.3d at 1164)).

Plaintiff maintains, however, that the subject rods' use is determinative of their classification regardless of HTSUS headings 7228's and 7326's status as *eo nomine* tariff provisions. *See* Pl.'s Br. at 18-21. In making its argument, Plaintiff attempts to fit the facts of this

---

[19]     In *Travenol Laboratories, Inc. v. United States*, the Customs Court described a tariff provision covering "[h]ose, pipe, and tubing . . . not specially provided for [elsewhere]" as an "[e]o nomine provision of the 'basket' type." 83 Cust. Ct. 1, 2, 4, 476 F. Supp. 1075, 1076, 1077 (1979). Here, like the tariff provision in *Travenol*, HTSUS heading 7326 ("Other articles of iron or steel") describes articles by name, not use. Additionally, Explanatory Note 73.26 provides: "This heading covers all iron or steel articles . . . **other than** articles . . . *more specifically covered elsewhere in the Nomenclature*." Explanatory Note 73.26 (emphasis added). Thus, like the tariff provision in *Travenol*, HTSUS heading 7326, too, describes articles by name (not use) and contains the "not specially provided for" elsewhere clause indicative of a basket provision.

case into the framework of the Federal Circuit's decisions in *GRK Canada, Ltd. v. United States*, and *Ford Motor Co. v. United States*. *See* Pl.'s Br. at 19 ("The grinding rods fit precisely into the scenario described by the Appellate Court in *Ford* and *GRK Canada*."). These cases are inapposite.

*GRK Canada, Ltd. v. United States* considered whether a use limitation could be read into an *eo nomine* provision covering "other wood screws." *See* 761 F.3d 1354, 1359 (Fed. Cir. 2014). There, noting that "it [wa]s evident that the material with which the screw is intended to be used is inherent within the name of the *eo nomine* tariff classification 'other wood screw,'"—i.e., the wood screws were not made of wood but rather metal screws used to fasten wood—the Court determined that "[t]he use of goods may be an important aspect of the distinction of certain *eo nomine* provisions . . . where . . . the name of the provisions refers directly to the use of subject articles." *Id.* at 1359, 1361.

Similarly, *Ford Motor Co. v. United States* looked at whether a use limitation could be read into an *eo nomine* tariff provision covering "[m]otor cars and other motor vehicles principally designed for the transport of persons." *See* 926 F.3d 741, 750 (Fed. Cir. 2019). There, the Court concluded that the "appeal present[ed] one of the very limited circumstances where the relevant heading . . . is an *eo nomine* provision for which consideration of use is appropriate because [the] [h]eading . . . inherently suggest[ed] looking to intended use." *Id.* at 753. That is, "the 'principally designed for' portion [of the heading] inherently suggest[ed] a type of use, i.e., 'the transport of persons.'" *Id.* at 750.

Here, Plaintiff claims that use is essential to the court's classification determination because—like the tariff provisions for "other wood screws" in *GRK Canada* and "[m]otor cars and other motor vehicles principally designed for the transport of persons" in *Ford Motor Co.*—the "text of subheading 7326.11, HTSUS, inherently suggests that the products classified under its

scope are for a particular type of use as a grinding ball or similar object." Pl.'s Br. at 19. Plaintiff's

argument fails for two reasons. First, the language of HTSUS *subheading* 7326.11.00 is irrelevant

under GRI 1 because the court is only concerned with a comparison of the competing *headings*

(i.e., HTSUS heading 7228 and 7326). Plaintiff attempts to expand the scope of HTSUS heading

7326 to include the terms of its subheading 7326.11.00 and, for the reasons discussed in the next

subsection, this is not allowed.

Second, unlike the *eo nomine* provisions at issue in *GRK Canada* and *Ford Motor Co.*,

neither HTSUS heading 7228 ("Other bars and rods of other alloy steel") nor 7326 ("Other articles

of iron or steel") inherently suggests a type of use. In fact, HTSUS headings 7228 and 7326 are

unlike any provisions for which courts have previously considered use—principal or actual. *Cf.*

*S.C. Johnson & Son, Inc. v. United States*, 42 CIT __, __, 335 F. Supp. 3d 1294, 1299 (2018)

("Because the terms of the heading contemplate a specific use (<u>i.e.</u>, 'conveyance or packing of

goods'), this court regards HTSUS Heading 3923 as a principal use provision."); *Clarendon Mktg.,*

*Inc. v. United States*, 144 F.3d 1464, 1467 (Fed. Cir. 1998) (citation omitted) ("The inclusion in

this definition of the words 'to be used for' makes classification under the . . . subheading

dependent upon the actual use of the merchandise, *i.e.*, the subheading is an actual use provision.").

Although the scope of each heading at issue here necessarily encompasses articles designed

for various uses, nothing about the language of these headings explicitly or implicitly suggests that

an article's principal or actual use is necessary to or determinative of its classification under either

heading. Therefore, the court will not read a use limitation into either of the competing *eo nomine*

tariff headings as part of its GRI 1 analysis. *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375,

1379 (Fed. Cir. 1999) ("[A] use limitation should not be read into an *eo nomine* provision unless

the name itself inherently suggests a type of use." (citation omitted)).

**B.      Headings Are to Be Evaluated Without Reference to Their Subheadings**

In a similar vein, Plaintiff argues that the subject steel rods are not classifiable under HTSUS *heading* 7228 because, as a result of the processing that occurred at ME Long Teng's manufacturing plant, the rods have assumed the character of articles in—and should therefore be classified under—HTSUS *subheading* 7326.11.00 ("Grinding balls and similar articles for mills"). By making this argument, Plaintiff attempts to bypass the initial step in a classification analysis (i.e., a comparison of *headings*) by expanding the scope of HTSUS heading 7326, for classification purposes, to include the terms of its subheading (i.e., HTSUS subheading 7326.11.00).

Plaintiff insists the subject rods have assumed the character of articles under HTSUS subheading 7326.11.00, by citing HTSUS General Note 3(h)(vi)[20] for the proposition that a reference to HTSUS heading 7326 ("Other articles of iron or steel") necessarily encompasses the terms of HTSUS subheading 7326.11.00 ("Grinding balls and similar articles for mills"). *See* Pl.'s Reply at 7 ("A reference to 'Grinding balls and similar articles for use in mills' need not appear in a four-digit Heading, but may appear in a six-digit subheading of the tariff.").

HTSUS General Note 3(h)(vi) provides:

> (h) Definitions. For the purposes of the tariff schedule, unless the context otherwise requires—
>
> . . . .
>
> > (vi) the term "headings" refers to the article descriptions and tariff provisions appearing in the schedule at the first hierarchical level; the term "subheading" refers to any article description or tariff provision indented thereunder; a reference to "headings" encompasses subheadings indented thereunder.

---

[20]      The court notes, solely for purposes of clarity and accuracy, that Plaintiff, in its brief, mischaracterizes HTSUS General Note 3(h)(vi) as an Additional U.S. Rule of Interpretation. Plaintiff's mischaracterization, however, has no impact on the outcome of this case.

General Note 3(h)(vi), HTSUS.

Plaintiff, in this way, misreads not only the intent, but also the express meaning, of General Note 3(h)(vi). Neither General Note 3(h)(vi) nor anything else in the HTSUS does what Plaintiff argues. That is, create a rule that a term of a subheading should be used to interpret the scope of a term of a heading, or the scope of a heading as determined according to its terms, when read in accordance with the relevant section and chapter notes. Rather, General Note 3(h)(vi) is merely a definitional provision describing what headings and subheadings are, not how they are to be applied for purposes of classification.[21]

Instead, "[t]he classification of merchandise is governed by the GRIs . . . which are applied in numerical order." *See R.T. Foods, Inc.*, 757 F.3d at 1353 (citation omitted). Thus, classification analysis begins with GRI 1, which provides that "classification shall be determined according to the terms of the *headings* and any relative section or chapter notes." *Id.* (emphasis in original) (first quoting GRI 1, HTSUS; and then citing *Orlando Food Corp.*, 140 F.3d at 1440 ("[A] court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading.")).[22]

As mentioned above, the Federal Circuit has cautioned that, "[p]ursuant to GRI 1, the possible headings are to be evaluated without reference to their subheadings, which cannot be used

---

[21]       The court notes that all of the definitions provided for under HTSUS General Note 3(h) are preceded by the words "unless the context otherwise requires." *See* General Note 3(h), HTSUS. Here, Plaintiff asks the court to interpret and apply HTSUS General Note 3(h)(vi) in a manner that is contrary to GRI 1 and controlling precedent. Thus, even assuming *arguendo* that HTSUS General Note 3(h)(vi) is one of the sources that the court may look to when determining the classification of merchandise for legal purposes, it cannot do so in the context of this case.

[22]       Importantly, under GRI 1, the General Notes are not mentioned as one of the sources used to determine the classification of merchandise for legal purposes. *See* GRI 1, HTSUS ("[F]or legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes.").

to expand the scope of their respective headings." *Id.* (citing *Orlando Food Corp.*, 140 F.3d at

1440 ("Only after determining that a product is classifiable under the heading should the court

look to the subheadings to find the correct classification for the merchandise. . . . [W]hen

determining which heading is . . . more appropriate for classification, a court should compare only

the language of the headings and not the language of the subheadings.")). In other words, the GRIs

themselves direct that the terms of a subheading are to be considered only after the correct heading

has been determined. *See, e.g.*, *Mondiv, Div. of Lassonde Specialties Inc. v. United States*, 42 CIT

__, __, 329 F. Supp. 3d 1331, 1344 (2018) ("After the proper heading of the product is determined

[under GRI 1], the court utilizes GRI 6 to determine the appropriate subheading.").

Thus, Plaintiff's attempt to expand the scope of its preferred HTSUS heading 7326 ("Other

articles of iron or steel") to include the terms of its subheading 7326.11.00 ("Grinding balls and

similar articles for mills") is impermissible under the GRIs. Therefore, the court will first evaluate

the parties' competing tariff provisions at the heading level, without reference to their subheadings,

as is provided for in GRI 1.

## II.     Classification of the Subject Rods Pursuant to GRI 1

Keeping in mind that the scope of HTSUS headings 7228 and 7326 cannot be expanded by

reference to their respective subheadings, and that the subject rods' "use" as grinding rods is

irrelevant to their classification, the court turns next to a comparison of the competing headings

pursuant to GRI 1. For the following reasons, the court concludes that an evaluation of the parties'

competing tariff headings under GRI 1 demonstrates that the subject rods are properly classified

under HTSUS heading 7228, and not HTSUS heading 7326.

### A.   The Subject Rods Are Properly Classified Under HTSUS Heading 7228 Pursuant to GRI 1

HTSUS heading 7228 covers "[o]ther bars and rods of other *alloy steel*; angles, shapes and sections, of other alloy steel; hollow drill bars and rods, of alloy or non-alloy steel." Heading 7228, HTSUS (emphasis added). HTSUS chapter 72 note 1(m) defines "other bars and rods" as

> Products which do not conform to any of the definitions at (ij)[23], (k)[24] or (l)[25] above or to the definition of wire, which have a uniform solid cross-section

---

[23]    Note (ij) covers "semifinished products" defined as: "Continuous cast products of solid section, whether or not subjected to primary hot-rolling; and [o]ther products of solid section, which have not been further worked than subjected to primary hot-rolling or roughly shaped by forging, including blanks for angles, shapes or sections. These products are not presented in coils." Ch. 72, Note (ij), HTSUS.

[24]    Note (k) covers "flat-rolled products" defined as:

Rolled products of solid rectangular (other than square) cross-section, which do not conform to the definition at (ij) above in the form of:

- coils of successively superimposed layers, or

- straight lengths, which if of a thickness less than 4.75 mm are of a width measuring at least 10 times the thickness or if of a thickness of 4.75 mm or more are of a width which exceeds 150 mm and measures at least twice the thickness.

Flat-rolled products include those with patterns in relief derived directly from rolling (for example, grooves, ribs, checkers, tears, buttons, lozenges) and those which have been perforated, corrugated or polished, provided that they do not thereby assume the character of articles or products of other headings.

Flat-rolled products of a shape other than rectangular or square, of any size, are to be classified as products of a width of 600 mm or more, provided that they do not assume the character of articles or products of other headings.

Ch. 72, Note (k), HTSUS.

[25]    Note (*l*) covers "bars and rods, hot-rolled, in irregularly wound coils" defined as:

Hot-rolled products in irregularly wound coils, which have a solid cross-section in the shape of circles, segments of circles, ovals, rectangles (including squares), triangles or other convex polygons (including "flattened circles" and "modified rectangles", of which two opposite sides are convex arcs,

along their whole length in the shape of circles, segments of circles, ovals, rectangles (including squares), triangles or other convex polygons (including "flattened circles" and "modified rectangles", of which two opposite sides are convex arcs, the other two sides being straight, of equal length and parallel).

Ch. 72, Note 1(m), HTSUS.

It is undisputed that the subject rods do not conform to any of the chapter 72 definitions in notes (ij), (k), or (*l*), or the chapter 72 definition of wire.[26] There appears to be some disagreement, however, as to whether the "uniform solid cross-section" runs along the "whole" length of the subject steel rods.

Plaintiff maintains that the subject steel rods "have a uniform cross section along *most* of their length, except at the ends, where they are notched to fit into a particular rod mill." Pl.'s Resp. SOF ¶ 4 (emphasis added). For its part, Customs "[d]enies that '{t}he ends of the grinding rods [are] notched' [and a]vers that photographs of the rods do not show the rods to have notched ends."[27] Def.'s Resp. SOF ¶ 12.

_____

the other two sides being straight, of equal length and parallel). These products may have indentations, ribs, grooves or other deformations produced during the rolling process (reinforcing bars and rods).

Ch. 72, Note (*l*), HTSUS.

[26]   Note (o) defines "wire" as: "Cold-formed products in coils, of any uniform solid cross-section along their whole length, which do not conform to the definition of flat-rolled products." Ch. 72, Note (o), HTSUS.

[27]   As this Court and the U.S. Court of Appeals for the Federal Circuit have confirmed, "the merchandise itself is often a potent witness in classification cases." *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989) (citation omitted); *see Dependable Packaging Sols., Inc. v. United States*, 37 CIT 242, 254 (2013) (not reported in Federal Supplement) (citation omitted), *aff'd*, 757 F.3d 1374 (Fed. Cir. 2014). In this instance, while there are no physical samples of the subject rods for the court to examine, an examination of the official company documents describing the rods' specifications and manufacturing process, along with photographs of the rods themselves, suggests that they are not "notched" at their ends.

Whether the ends of the subject steel rods are "notched," however, is immaterial because HTSUS chapter 72 note 1(m) provides that "products may . . . have indentations, ribs, grooves or other deformations produced during the rolling process (reinforcing bars and rods) [or] be twisted after rolling," and still be considered "[o]ther bars and rods" for classification purposes. Ch. 72, Note 1(m), HTSUS.

The term "notch" is not defined in the HTSUS. A tariff term undefined by the HTSUS is construed in accordance with its common and commercial meaning. *See Baxter Healthcare Corp.*, 182 F.3d at 1337. The court, in ascertaining the common meaning of a tariff term undefined by the HTSUS, "may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information." *Id.* at 1338 (citation omitted). The Oxford English Dictionary defines a notch as "[a] groove, incision, or indentation (typically V-shaped in cross-section) in an edge, or across or through a surface." *Notch*, https://www.oed.com/view/Entry/128536?rskey=N0SF70&result=1#eid (last visited Apr. 11, 2023).

Thus, it follows that a "notch," as a type of "groove" or "indentation," is provided for under the relevant HTSUS chapter note. Therefore, that a steel bar or rod may contain notches, ribs, grooves, or indentations does not render it without a uniform solid cross-section along its whole

---

The only mention of the rods being "notched" is in Plaintiff's Rule 56.3 Statement of Facts. *See* Pl.'s SOF ¶ 12. There, Plaintiff claims that "[t]he ends of the grinding rods will be notched, so that they fit into a particular rod grinding mill within which they are intended to be used" and cites the declaration of Matthew Schlue, a Senior Account Manager at ME Global, Inc., as support. *See id.* (citing Schlue Decl. ¶¶ 3, 14 & Exs. A-C, ECF No. 20-4). While the portions of Mr. Schlue's declaration cited by Plaintiff state that the ends of the rods are "sized" and "cut" to a customer specific length, there is no mention of the rods being "notched." *See* Schlue Decl. ¶¶ 3, 14 & Exs. A, B, C. That is also true of the official company documents describing the specifications of the subject rods, which state that they are "[s]aw cut [on] both ends," but do not say anything about being notched. *Id.* Ex. B. Moreover, the record photographs depicting the subject rods show no signs of notching at their ends. *See id.* ¶ 21 & Ex. F.

length for purposes of classification under HTSUS heading 7228. Consequently, the subject rods satisfy the definition of "[o]ther bars and rods" under HTSUS heading 7228 regardless of whether they have notched ends or not.

"Other bars and rods" of HTSUS heading 7228 must also be of "other alloy steel" to be classifiable under this heading. The relevant portions of note 1(f) to HTSUS chapter 72 define "other alloy steel" as "[s]teels not complying with the definition of stainless steel[28] and containing by weight one or more of the following elements in the proportion shown . . . 0.3 percent or more of chromium." Ch. 72, Note 1(f), HTSUS.

The metallurgical testing performed by Plaintiff shows that the percentage of chromium contained in the subject steel rods, for the period in question, fluctuated between 0.3% to 0.39%, by weight. *See* Def.'s Br. Ex. B at 1-2, ECF No. 23-2 (Pl.'s Resp. Def.'s 2d Interrogs.). Therefore, because the subject steel rods do not comply with the definition of stainless steel (i.e., "containing, by weight 1.2 percent or less of carbon and 10.5 percent or more of chromium"), and their chromium content never dipped below the 0.3% threshold requirement, they satisfy the chapter 72 definition of "[o]ther alloy steel."

As Customs notes, HTSUS heading 7228 is an *eo nomine* provision covering "[o]ther bars and rods of other alloy steel." Heading 7228, HTSUS. As demonstrated above, the subject rods satisfy the controlling HTSUS chapter 72 notes that define "[o]ther bars and rods of other alloy steel." Thus, pursuant to a GRI 1 analysis, the rods are classifiable under HTSUS heading 7228 because they are specifically described by the terms of HTSUS heading 7228 as "[o]ther bars and rods of other alloy steel." Heading 7228, HTSUS.

---

28      Note 1(e) to chapter 72 defines "stainless steel" as "[a]lloy steels containing, by weight 1.2 percent or less of carbon and 10.5 percent or more of chromium, with or without other elements." Ch. 72, Note 1(e), HTSUS.

**B.      The Subject Steel Rods Are Not Properly Classified Under HTSUS Heading 7326 Pursuant to GRI 1**

Plaintiff's proposed heading is HTSUS 7326—a "basket provision" covering "[o]ther articles of iron or steel."[29] Heading 7326, HTSUS. "A basket provision is not a specific provision." *R.T. Foods, Inc.*, 757 F.3d at 1354 (quoting *Int'l Bus. Machs. Corp. v. United States*, 152 F.3d 1332, 1338 (Fed. Cir. 1998)). "Therefore, '[c]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically.'" *Id.* (quoting *Rollerblade, Inc. v. United States*, 24 CIT 812, 814, 116 F. Supp. 2d 1247, 1251 (2000), *aff'd*, 282 F.3d 1349 (Fed. Cir. 2002)).

---

[29]      The General Explanatory Notes to HTSUS chapter 73 provide:

This Chapter covers a certain number of specific articles in headings 73.01 to 73.24, and in headings 73.25 and 73.26 a group of articles not specified or included in Chapter 82 or 83 and *not falling in other Chapters of the Nomenclature*, of iron (including cast iron as defined in Note 1 to this Chapter) or steel.

Ch. 73, General Explanatory Notes, HTSUS (emphasis added).

The relevant portion of the Explanatory Note 73.26 states:

This heading covers all iron or steel articles obtained by forging or punching, by cutting or stamping or by other processes such as folding, assembling, welding, turning, milling or perforating **other than** articles included in the preceding headings of this Chapter or covered by Note 1 to Section XV or included in **Chapter 82** or **83** or *more specifically covered elsewhere in the Nomenclature*.

. . .

This heading **does not cover** forgings which are products falling in other headings of the Nomenclature (e.g., recognisable parts of machinery or mechanical appliances) or unfinished forgings which require further working but have the essential character of such finished products.

Explanatory Note 73.26 (emphasis added).

In other words, because Plaintiff's proposed HTSUS heading 7326 is a basket provision, the subject rods can only be classified under that heading if they are not more specifically covered elsewhere in the tariff schedule. Since the court has determined that the rods are specifically covered by HTSUS heading 7228 ("Other bars and rods of other alloy steel"), it follows that they cannot also be classified under HTSUS heading 7326—a basket provision covering "[o]ther articles of iron or steel." Put another way, "rods of other alloy steel" is more specific than "other articles of steel," and thus GRI 1 directs that the subject rods be classified under HTSUS heading 7228.

### III. The Subject Rods Are Properly Classified Under HTSUS Subheading 7228.40.00 Pursuant to GRI 6

Having determined the subject rods are properly classified under HTSUS heading 7228, the court turns next to an analysis of the competing subheadings. While Customs originally classified the rods under HTSUS subheading 7228.30.80 ("Other bars and rods, not further worked than hot-rolled, hot-drawn or extruded . . . Other"), it now maintains that HTSUS subheading 7228.40.00 ("Other bars and rods, not further worked than forged") describes the rods with more specificity.[30] That is, for Customs, although both HTSUS subheadings 7228.30.80 and 7228.40.00 appear to describe the subject rods insofar as they are the product of hot-rolling and forging, HTSUS subheading 7228.40.00 ("Other bars and rods, not further worked than forged") is more specific than HTSUS subheading 7228.30.80 ("Other bars and rods, not further worked than hot-rolled, hot-drawn or extruded . . . Other") because it describes the rods in their final form.

---

[30]         Both HTSUS subheadings 7228.30.80 and 7228.40.00 are subject to the same 25% *ad valorem* duty. Therefore, the subject steel rods will be assessed a 25% *ad valorem* duty rate regardless of whether they are classified under HTSUS subheading 7228.30.80 or HTSUS subheading 7228.40.00.

The court looks to GRI 6 to determine whether HTSUS subheading 7228.30.80 or 7228.40.00 is the correct tariff designation for the subject rods. *See Well Luck Co.*, 887 F.3d at 1112. GRI 6 instructs that:

> For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

GRI 6, HTSUS.

Here, the subject rods are first hot-rolled and then forged. *See* Pl.'s SOF ¶ 7. Therefore, because the rods are forged after being hot-rolled, HTSUS subheading 7228.30.80, which covers "[o]ther bars and rods, not further worked than hot-rolled, hot-drawn or extruded . . . [o]ther," only describes the subject steel rods at an intermediate stage of their production. On the other hand, HTSUS subheading 7228.40.00, which covers "[o]ther bars and rods, not further worked than forged," more specifically describes the subject steel rods as a finished product.

The term "further worked" is defined in Additional U.S. Note 2 to chapter 72, which provides:

> For the purposes of this chapter, unless the context provides otherwise, the term "<u>further worked</u>" refers to products subjected to any of the following surface treatments: polishing and burnishing; artificial oxidation; chemical surface treatments such as phosphatizing, oxalating and borating; coating with metal; coating with nonmetallic substances (e.g., enameling, varnishing, lacquering, painting, coating with plastics materials); or cladding.

Ch. 72, Additional U.S. Note 2, HTSUS.

While "forging" is not explicitly referenced in Additional U.S. Note 2, the definition of "further worked" is not limited to the note's listed surface treatments. Additional U.S. Note 2 expressly states that the term "further worked" constitutes the listed surface treatments "unless the

context provides otherwise." Ch. 72, Additional U.S. Note 2, HTSUS. Here, the context provides otherwise.

In this case, the subject rods were hot-rolled, then forged, and were not subject to any of the surface treatments listed under Additional U.S. Note 2 after being hot-rolled and forged. Thus, if the court were to read "further worked" as limited to surface treatments, it would render unnecessary the qualifying language (i.e., "than hot-rolled, hot-drawn or extruded" in HTSUS subheading 7228.30.80 and "than forged" in HTSUS subheading 7228.40.00) that distinguishes the two competing tariff provisions.

As with any statute, "[w]hen interpreting HTSUS provisions, [courts] must strive to give effect to every word in the statutory text." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1371 (Fed. Cir. 2013) (first citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013); and then citing *Corley v. United States*, 556 U.S. 303, 314 (2009)). An interpretation of a tariff provision will be disfavored if it renders the terms of another HTSUS provision superfluous. *See id.* Thus, courts should construe the provisions of the tariff code in a way that avoids rendering terms redundant, meaningless, or inoperative. Therefore, in this context, the term "further worked" is more appropriately defined by its common meaning, i.e., "to form, fashion, or shape an existing product to a greater extent." *Cummins Inc.*, 454 F.3d at 1365.

"Forging" is defined under chapter 72 as "the hot deformation of the metal in the mass by means of drop hammers or on forging presses, to obtain pieces of any shape." Ch. 72, General Explanatory Note (IV)(2)(A)(2), HTSUS. The act of "forging" clearly falls within the common meaning of "further worked" as it is the process of shaping an existing product—in this case, the steel bars—to a greater extent.

Thus, applying GRI 6, the subject rods cannot be classified as "[o]ther bars and rods, not further worked than hot-rolled, hot-drawn or extruded . . . [o]ther" under HTSUS subheading 7228.30.80 because forging is a type of further working, and the rods were forged *after* being hot-rolled. Accordingly, the court concludes that the subject rods are properly classified under HTSUS subheading 7228.40.00 as "[o]ther bars and rods, not further worked than forged."

## CONCLUSION

For the foregoing reasons, the court holds that the subject steel rods are classifiable under HTSUS subheading 7228.40.00 ("Other bars and rods, not further worked than forged"). The court denies Plaintiff's motion for summary judgment and grants Customs' cross-motion for summary judgment. Judgment will be entered accordingly.

_/s/ Richard K. Eaton_
Judge

Dated:    May 2, 2023
            New York, New York